## DAVIS *v.* PATTISON.

The carrier of a boat-load of wheat lost or converted a portion of it, and discharged the residue into a barge provided by an intermediate consignee for transporting it to its ultimate destination. The intermediate consignee refused to pay freight for the quantity delivered, unless the carrier would allow and deduct the value of the wheat lost. *Held*, that no contract to pay the freight was to be implied under these circumstances, and that an action therefor would not lie against the intermediate consignee.

An intermediate consignee is, in virtue of that character, authorized to adjust and receive damages from a loss of part of the property.

The rights and duties of intermediate consignees discussed, *per* ALLEN, J.

APPEAL from the Supreme Court. Action to recover the freight upon a quantity of wheat transported by canal from Oswego to Troy, by one Davis, and there delivered to the defendant, under this bill of lading:

"OSWEGO, *Nov.* 11, 1856.

"Received, of John Van Buren, Jr., on board boat C. A. Myers, of Whitesborough, whereof L. Davis is master, the following property, in good order, to be delivered in good order, as addressed in the margin, without delay:

"Acc't L. A. G. B. Grant,  Care Grant, Armstrong & Co., New York, and E. C. Pattison, Troy.

"3,700 bushels Wheat, Freight hence to New York, 16 cts. "   "   " Troy, 12 cts. E. C. Pattison, collect and pay Capt. twelve cents per bushel, less one hundred dollars advanced."

Upon the trial these facts were proved: The plaintiff's assignor, Capt. Lewis Davis, received on board of his canal boat, at Oswego, from one Van Buren, 3,700 bushels of wheat, to be carried to the defendant, at Troy. Capt. Davis delivered on board of the defendant's barge, at Troy, 3,670 bushels only: the residue, being thirty bushels, he had either converted to

his own use or lost. The defendant did not know of this deficiency until the cargo of wheat had been measured out from the canal-boat into the defendant's barge. Upon the deficiency being ascertained, the defendant offered to pay the freight of twelve cents a bushel, less the one hundred dollars which had been advanced on account thereof at Oswego, if Capt. Davis would deduct therefrom the value of the thirty bushels short. Capt. Davis refused to make the deduction, and the defendant refused to pay him unless he would do so. Thereupon Capt. Davis assigned his claim for the freight to the plaintiff, and this action was brought to recover the freight on the 3,670 bushels delivered, less the one hundred dollars advanced. The defendant offered evidence of a tender of the freight for the quantity of wheat delivered, deducting the value of the thirty bushels lost, which was rejected, and the defendant took an exception. He also excepted to the judge's refusal to nonsuit the plaintiff. The jury, under the direction of the judge, found a verdict for the plaintiff, upon which judgment was entered, which having been affirmed at general term in the fifth district, the defendant appealed to this court.

*Francis Kernan*, for the appellant.

*Montgomery H. Throop*, for the respondent.

SUTHERLAND, J. I think the action cannot be maintained. I think the question is precisely the same as if the defendant had been the ultimate consignee of the cargo of wheat. As to the plaintiff's assignor, and his remedy for his freight, the defendant was the ultimate consignee. If the action can be maintained, it must be on the ground of an implied contract on the part of the defendant to pay the freight. This contract must be implied from the acts of the parties in delivering and accepting the cargo. I think the implication is repelled by the circumstances of the case. No doubt a common carrier has a lien on the property carried, for his freight or charges. (3

Kent's Com., 221, 222.) Had Capt. Davis delivered to the defendant, and the defendant accepted, the whole 3,700 bushels, I assume, at least for the purposes of this case, that the law would have implied a contract on the part of the defendant to pay the freight, although the bill of lading did not contain the words or condition, "*he paying the freight.*" But it can hardly be said that the defendant did accept the 3,670 bushels, in the sense in which the counsel for the plaintiff says the defendant accepted, and insists upon his acceptance as implying a contract. He must be supposed to have consented to the transferring of 3,670 bushels from the canal-boat to his barge, supposing that there was 3,700 bushels, according to the bill of lading. The law charged the loss of the thirty bushels upon Capt. Davis; and, in the absence of any explanation of the loss, he must be supposed to have known of the deficiency before he commenced transferring the wheat from the canal-boat to the barge. He should have informed the defendant of it before he commenced the transfer, if, waiving his lien, he meant to look to the defendant for his freight, on the ground of the transfer and acceptance. Had he done so, we must infer, from the conduct of the defendant immediately upon ascertaining the deficiency, that he would not have permitted the transfer unless Capt. Davis had agreed to deduct from the freight the value of the thirty bushels short. To allow a contract to be implied on the part of the defendant from the delivery and acceptance of the 3,670 bushels under such circumstances, is not only forbidden by the conduct of the defendant immediately upon being informed of the loss, but would permit Capt. Davis to take advantage of his own wrong. The defendant's offer was fair and reasonable. Capt. Davis should have made the deduction, and received his money. If the defendant should be regarded as the mere agent of the owner to take charge of and forward the wheat from Troy to New York, I think he had authority to make the offer.

The judgment of the Supreme Court should be reversed, and a new trial granted.

ALLEN, J., referred, for the grounds of his judgment, to his dissenting opinion in the court below, which was as follows:

The principles by which the rights and obligations of consignees of property at intermediate ports of transhipment are governed, can hardly be said to be entirely settled by adjudications.

The prosecution of the inland navigation of the country, with its frequent transhipments, gives rise to many questions unknown to commerce heretofore, and the interests of trade may possibly require a modification of some of the rules which, under different circumstances, have been found all-sufficient to protect the rights and interests of property owners as well as the shippers. At all events, before an adjudication is made which will jeopard the interests of any class concerned in the inland commerce and navigation of the country in obedience to adjudications based upon a strictly marine contract, it should be seen that the case is technically within the rule established. Assuming, without deciding, that the party to whose care, at an intermediate port, the property is addressed, to be transhipped and forwarded to the owner or ultimate consignee, is, upon the receipt of the goods, and in the absence of any provision, express or implied—except as a provision may be implied from their receipt—liable personally to the carrier for the freight and charges, the question in this case will be as to the extent of the rights with which he is clothed in behalf of the owner. Ordinarily, a person acting as agent, and whose agency is disclosed in the transaction, is not liable upon his contracts made within the scope of his agency. He merely binds the principal, and, if a liability is created in this case, it is an exception to the general rule, adopted for the convenience of commerce. The ultimate consignee is presumed to be the owner; and, whether he is or not, he is liable for the freight of property received under a bill of lading directing the goods to be delivered to him on payment of freight. (3 Kent's Com., 221; *Cock* v. *Taylor*, 13 East., 399; *Dougal* v. *Kemble*, 3 Bing., 383.) But it is not every case of the receipt of goods, even under a bill of lading, that makes the recipient liable for the

Davis v. Pattison.

freight, simply by reason of such receipt. (*Wilson* v. *Kymer*, 1 M. & S., 157; *Moors* v. *Kymer*, 2 id., n., 303; *Ward* v. *Felton*, 1 East., 507; *Barker* v. *Havens*, 17 John., 234; *Amos* v. *Temperly*, 8 M. & W., 798; *Tobin* v. *Crawford*, 9 id., 716; *Collins* v. *Union T. Co.*, 10 Watts, 384.) The whole law upon this subject is reviewed in *Sanders* v. *Vanzeller* (4 Adol. & Ellis, N. S., 260).

But I think we are not precluded by any adjudged case from considering the right of the "intermediate consignee" to call upon the carrier to perform the contract made by him for the delivery of the goods to such consignee, as well upon principle as upon authority.

That the "intermediate consignee" of the cargo could recoup for damages to that portion actually delivered and accepted, or for any portion which was missing and had been lost by the act of the carrier, there can be no question. *Shields* v. *Davis* (6 Taunt., 65), decides that a consignee cannot defend himself, in an action for freight upon goods which he has accepted, on the ground that the goods have been damaged in the carriage. The defence was urged upon the ground that the safe delivery of the goods was a condition precedent to the claim for freight, and this claim was overruled by the court. It was not, however, held that, by the acceptance of the goods, the consignee waived his claim for damages for injuries occasioned by the negligence of the carrier, and the right of set-off or recoupment was not raised or passed upon.

The right of the consignee in certain cases to bring an action for goods lost, is well settled. In *Evans* v. *Marlett* (1 Ld. Raym., 271), it is said: "If goods by bill of lading are conveyed to A, A is the owner, and must bring the action against the master of the ship, if they are lost. But if the bill be special, to be delivered to A to the use of B, B ought to bring the action. But if the bill be general to A, and the invoice only shows that they are upon the account of B, A ought always to bring the action, for the property is in him, and B has only a trust, *per totam curiam.*"

When the consignee has a special property in the goods, he

can always maintain an action for their conversion or for any injury to them. (*Fitzhugh* v. *Wiman*, 5 Seld., 559.)

As a general rule, a suit founded upon the express contract contained in a bill of lading should be brought by the shipper with whom the master contracted, or by the owner of the goods in a case where the shipper acted as his agent. But a consignee or indorsee of the bill of lading may, as such, acquire an interest in the goods without a transfer of the contract contained in the bill. (*Dows* v. *Cobb*, 12 Barb., 310; *Sargent* v. *Morris*, 3 Barn. & Ald., 277.) But the question is not necessarily in whose name an action would properly be brought for the value of the wheat not delivered by the carrier. The defendant was consignee of the property, *quoad* the plaintiff's assignor, and a delivery of the property to him at Troy terminated the carrier's duty in respect to it, and discharged him from all liability as a carrier. So far as the plaintiff's assignor was concerned, the defendant was the ultimate consignee; for his contract for the carriage of the goods terminates with a delivery to him: he had no interest in their future or ulterior destination. He received them in his own right as carrier or as consignee in trust for the owner, or as the agent for the true owner. If he owned them, or was trustee for the rightful owner, then, within the case of *Evans* v. *Marlett*, being the consignee, he could maintain an action for the portion lost, or recoup the value thereof in an action for the freight. (Code, § 150.) It is assumed, however, that he was merely the agent of the owner to receive, pay charges, and forward or sell the property. This being so, the acceptance of the property by the agent was an acceptance by the owner, and an action would lie against the owner upon the assumpsit implied from the acceptance. The fact that the law gives an action against the agent, if it does so, when acting and receiving goods as consignee, does not discharge the principal. (*Shephard* v. *De Bernales*, 13 East., 508; *Barker* v. *Havens, supra.*) The carrier had his election to retain the property until payment of freight, or, having waived this right and delivered it, to look to the consignee-agent, or his principal. If the action had been against

Davis v. Pattison.

the principal, the doctrine of recoupment would apply; and it is not reasonable that his rights and remedies against the agent should be greater or more beneficial than those against the principal. But, aside from this consideration, and upon principle, I think the agent consignee has a right to withhold from the carrier an indemnity for injury to and loss of property, a part of the cargo for which freight is demanded. There is, in truth, due him from the consignee or other owner of the goods the freight, less the amount by which the owner has been damnified by the failure of the carrier properly to perform his duty. (*Campbell* v. *Thompson*, 1 Stark., 490.) In that case, the master had sold a part of the cargo without authority, and Lord ELLENBOROUGH held that the owner of the goods was entitled to set off the value against the freight, notwithstanding the freight had been assigned to a stranger. Now, payment by the agent, although in consequence of a liability resting upon him by reason of his position, is a payment by the principal. Upon the theory of the counsel for the plaintiff, the principal could not defend himself against the claim of his agent to be reimbursed the amount paid, notwithstanding it was not due the carrier or collectable by him of the principal directly. The carrier certainly had no lien upon the goods beyond the amount which was properly payable by the owner, but, upon payment of a larger sum by the agent, the goods are, in his hands, subject to a lien for the larger sum. Thus the carrier is made to transfer to the agent a greater interest in the property than he himself had. It would seem that an agent for an absent principal, who would voluntarily pay full freight for the portion of the cargo delivered, with evidence before him that a portion not delivered had been abstracted and disposed of by the carrier, and leave the principal to the pursuit of a hopeless remedy against a canal-boat proprietor, would be wanting in fidelity to his employer. The case might be somewhat different in result, if not in principle, if the freight claimed had been earned in a maritime voyage, where "the ship would be bound to the cargo" upon the bill of lading.

Upon the case, as made upon the trial, the master of the boat, the plaintiff's assignee, had appropriated to his own use thirty bushels of wheat. The owner of the wheat could waive the tort and bring assumpsit for its value. It was, in fact, so much paid upon the freight. The owner of the wheat was only chargeable with the balance, and it is not easy to see how a person could be compelled to pay a greater sum than was equitably due the plaintiff upon the contract. The plaintiff could compel, in this way, the owner to pay a much larger amount than could have been collected of him had he received the goods in person and not by his agent.

Public policy, the interests of commerce, and the security of those doing business upon the canals, require that the intermediate consignees for transhipment, when charged with the payment of freight and charges, should be permitted to protect the interests of their principals, in whose stead they act. This authority must be inferred, otherwise the owners of property transported in part upon the canal and transhipped at intermediate ports will hold their goods by a very slight tenure, depending entirely upon the honesty and responsibility of the boatmen.

The contract is really an entire contract for the transportation of the whole quantity of wheat shipped; but if any part of it is lost by the perils of the voyage, for which the carrier is not responsible, and the residue is delivered and accepted, though freight cannot be apportioned, it will be held so far divisible as to allow, in furtherance of justice, a recovery of the freight already earned. But this principle will not interfere with the rights of the shipper or owner of the property under the same contract or bill of lading.

The principles laid down by McKissock, J., in *Hinsdale* v. *Weed* (5 Denio, 172), are founded in justice, and are not inconsistent with the decisions of our courts or any established rule of law. Judge Whittlesey finds another reason for arriving at the same result, but does not dissent from the views of Judge McKissock. They agreed that the owners of a vessel or boat could recover on an implied assumpsit against the con-

signee named in the bill of lading, on his receiving the property shipped, and that, if part of the property be lost in the course of the voyage and the consignee accept the residue, he becomes liable to pay freight *pro rata;* and Judge McKissock holds that the consignee may recoup the damages on account of the property not delivered, in an action against him for the freight.

I am of the opinion that the judgment should be reversed, and a new trial granted, costs to abide the event.

All the judges concurred with both opinions.

Judgment reversed, and new trial ordered.