PETER ZINK, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error. ,

*Larceny — what facts authorize a conviction of.*

One Schelly was induced by the fraudulent representation of the plaintiff in error to consign to him for sale certain malt ; Schelly intended that the malt should go into the possession of the plaintiff, to be sold by him for the benefit of Schelly, the consignor, and that the proceeds should be remitted to him.   The plaintiff in error received the malt, sold it in violation of the terms of the consignment, and converted the proceeds to his own use.   Upon his trial for larceny the court charged, that if he obtained possession of the malt with the intent to deprive the owner of his property in it, and to defraud him and not to account to him for the goods or for the money, and if he received the goods in pursuance of such design, then he might be convicted of larceny.

*Held*, that the charge was proper, and that a conviction thereunder should be sustained.   (Ingalls, J., dissenting.)

Writ of error to the New York Court of General Sessions to review a conviction of the plaintiff in error of the crime of grand larceny.   Plaintiff in error was jointly indicted with Louis Diehl and Samuel Schuster for the larceny of 501 sacks of malt on the 10th of March, 1875.   There were two counts in the indictment: One for larceny of the malt, and the other for receiving the malt knowing it to have been stolen.   The issue was tried at the March Term of the General Sessions against Zink alone, who was convicted on the first count.   The property in questions belonged to

one John Schelly, who was a resident of Hamilton, Ohio. It was consigned by Schelly to the plaintiff in error with the intent that it should go into his possession and be sold by him for the benefit of the consignor, and that the proceeds thereof should be returned to the consignor.

*Ira Shafer*, for the plaintiff in error.

*B. K. Phelps* (district attorney), for the people.

Daniels, J. :

The prisoner was indicted and convicted of stealing five hundred and one sacks of malt, the property of John Schelly. He resided at Hamilton, in the State of Ohio, and consigned this and other malt to the prisoner for sale at the city of New York, and it was there sold, but not according to the terms of the consignments. The proceeds, so far as they were received by him were not sent or remitted, as they should have been, to the consignor, but in violation of the terms under which the malt was received, they were converted and appropriated by the prisoner to his own use. The malt was delivered to a railway company at Hamilton, in Ohio, by Schelly, its owner, and bills of lading taken for it by the terms of which the carrier undertook to transport and deliver it to the prisoner at Melrose, in the city of New York, and it was there delivered to him accordingly. This was evidently induced by false representations made by the prisoner concerning his financial situation, and of the intention and purposes to be executed by him concerning it, and it was in reliance upon the truth of the representations made, that the prosecuting witness was induced to send the malt to him for sale. It was sent between the 7th of January and the 2d of March, 1875, and consisted of eleven different consignments, amounting to two thousand eight hundred and ninety bags, of about two and one-half bushels each.

As to nine of the consignments, invoices, etc., bills of sale were produced, stating in terms that the prisoner had bought the malt consigned, from the consignor ; but while they were made out in his writing they were not subscribed by him, and as to all of them he testified in the following manner : " You swore you thought he was good, and that is the reason you trusted him. Is that

true, you did trust him because you thought he was good ? I would not trust him that amount ; I would trust him a small amount. You did trust him that amount ? I did trust.him ; he wrote me a letter and he told me a lie. From what he told you and wrote you, you trusted him, did you not ? He promised to come to me with money. Did you trust this man from what he said to you, and from what he wrote you, with all these goods ? Yes, sir ; I would not trust him that much. You would not have trusted him if he had not said these things, represented these things, would you ? Certainly I would not. Having said these things and written these things, you did trust him ? I did trust him in this big amount ; I expected to get money every day, and he promised to come down to Hamilton himself. You expected to get the money for your goods ? Certainly. You expected him to sell the goods in order that he should get money ? Yes, sir. You meant he should do that ? Yes, sir. When he did sell the goods he did precisely what you intended he should ? But when he did not send you the money, he did not do what you intended him to do ? No, sir."

And the evidence discloses no different intention or purpose, concerning any portion of the consigned property. It was delivered by its owner, by means of these consignments, to the prisoner, with the intent that it should go into his possession, and be sold by him for the benefit of the consignor, and that the proceeds should be returned to him. What was given to the prisoner was the custody of the property for the accomplishment of a particular object—that of holding and selling it for the benefit of the consignor. The prisoner acquired no title to it, nor any right to withhold it from the consignor, who continued to be its owner, and could at any time, while the prisoner retained possession, have recovered it from him and countermanded his authority over it. In this respect the case differs from that of *Kelly* v. *People* (13 S. C. N. Y. [6 Hun], 509), where the title as well as the possession were transferred to the prisoner. Here the prisoner had the possession merely, without the title, and the transaction showed, for the time being, and until the property was actually sold, was to, and did, remain in the consignor.

The court, at the trial, charged the jury that if the prisoner obtained possession of the goods with the intent to deprive the owner of his property in them and to defraud him, and not to account to him for the goods or for the money, and that he received the goods in pursuance of that design, then he might be convicted of larceny, and the request to charge that the offense, if any was committed, was that of obtaining property by false pretenses or embezzlement, and not that of larceny, were refused. The prisoner's counsel excepted to the charge as given and to these refusals.

These exceptions present the controverted issue in substance and effect, upon which the conviction of the accused was secured. If the court was right in the disposition made of them, then there seems to be nothing in the case, or in the other rulings made, that can be of any positive benefit to the prisoner, and that it was right appears to result from the circumstance that he acquired only the bare possession of, without the title to, the property, with the authority to sell it for the benefit of another person who continued to be the owner. The case was delivered to the jury upon the theory that they could only convict in case it had been established that the prisoner obtained this possession, intending to deprive the owner of his property in the goods and to misappropriate their proceeds, and by their verdict of guilty, they must have been satisfied of the existence of that intent; and as they found it to have been proven it was a criminal intent and sufficient to constitute the crime of larceny.

In the case of *Smith* v. *People* (53 N. Y., 111), it was held that "the proposition is elementary that larceny may be committed of goods obtained from the owner by delivery, if it be done *animo furandi.*" "The rule is, that when the delivery of goods is made for a certain special and particular purpose, the possession is still supposed to reside, not parted with, in the first proprietor." (*Smith* v. *People*, 53 N. Y., 113.) "A distinction is made between a bail charge, or special use of the goods, and a general bailment, and it is not larceny if the owner intends to part with the property and deliver the possession absolutely, although he has been induced to part with the goods by fraudulent means. If, by trick or artifice, the owner of property is

induced to part with the custody or naked possession to one who receives the property *animo furandi*, the owner still meaning to retain the right of property, the taking will be larceny; but if the owner part with not only the possession but the right of property also, the offense of the party obtaining them will not be larceny but that of obtaining goods by false pretenses;" and then was added, what is significantly applicable to this case, that " the jury have found the intent to steal at the time of taking, which is all that is required to constitute larceny, where the mere possession is obtained by fraud or trick." (*Smith* v. *People*, 53 N. Y., 114.) And no different principle was advanced in the case of *People* v. *McDonald* (43 id., 61), nor in that of *Loomis* v. *People* (67 id., 322.) On the contrary, the principle of the last case tends to sustain the propriety of this conviction. The representations and assurances made use of were mere artifices to conceal the real purposes of the person making them, which was to induce the owner to place his property under the defendant's control in order to afford him a favorable opportunity of appropriating it to his own use, and that created the offense of larceny. (*Weyman* v. *People*, 11 S. C. N. Y. [4 Hun], 511.)

The case of *Regina* v. *Goodbody* (34 Eng. Com. Law, 951; 8 C. & P., 665) and *Regina* v. *Thomas* (38 Eng. Com. Law, 429; 9 C. & P., 741) have been relied upon as favorable to the prisoner's appeal. But they differ very materially from this case, in the fact that it did not there appear in any form that the accused were actuated by any criminal intent when they acquired possession of the property. On the other hand, the circumstances, under which the delivery was made, exclude the idea of the existence of any such intention.

Whether the court was right in allowing proof of the value of the bags, or of the market prices of malt, is of no particular importance in the case; for, according to the prices mentioned in the invoices, and at which the malt was actually sold under the defendant's authority, the value greatly exceeded that required to create the crime of grand larceny. Neither was there error in the refusals to charge, in the language of the several requests, that the jury should consider the invoices as evidence, and that the taking of the notes was evidence that a sale had been made. For the

learned recorder directed the jury that they were to reflect upon every item of evidence that had been adduced in the case, whether in oral statements or papers presented; they were the judges of all the evidence.

Other exceptions were taken, but they seem to be all subordinated to those already considered. If the case was correctly disposed of, so far as they are concerned, and it is believed, under the authorities that it was, then the prisoner has been lawfully convicted; and the security of trade and proprietary rights, as well as as a just administration of the laws, require that the result should not be disturbed. The judgment should therefore be affirmed.

POTTER, J., concurred.

INGALLS, P. J., dissenting:

I feel compelled to differ with our learned brother in the conclusion to which he has arrived in this case, and will state the reasons. John Schelly in accordance with an arrangement which he had made with Zink, the prisoner, consigned to him a quantity of malt, with directions to sell the same at a price designated, and after deducting expenses to remit the balance. Bills of lading in the usual form and without special conditions, accompanied the malt, which consisted of several shipments. Zink was to pay the freights and become liable therefor. (*Davis* v. *Pattison*, 24 N. Y., 317.) The malt was sold and notes were taken for the same; and there can be no doubt but that the purchasers acquired a good title thereto. It is quite apparent that Schelly was imposed upon by Zink, who doubtless deserves the punishment which the conviction would impose upon him; yet it should not be inflicted contrary to law. The prisoner was indicted and convicted of the offense of larceny, and the question presented is whether the facts established justified such conviction. We conclude that they did not, and consequently the judgment should be reversed. Schelly parted voluntarily with the actual possession of the malt, and by authorizing the sale surrendered all claim to the constructive possession thereof. Zink was directed to sell all of the malt, and was invested by Schelly with the *indicia* of ownership. Under such

circumstances we cannot assent to the proposition that the charge of larceny was properly sustained. (*Ross* v. *People*, 5 Hill, 294; *Mowrey* v. *Walsh*, 8 Cowen, 238; *The People* v. *McDonald*, 43 N. Y., 61.) The following cases are cited by the learned district-attorney in support of the conviction: (*Hildebrand* v. *People*, 1 Hun, 19; *Weyman* v. *People*, 4 id., 511; *Lewis & Loomis* v. *People*, 67 N. Y., 322; *Smith* v. *People*, 53 id., 111.) In all of these cases an examination shows that the control of the property was not absolutely parted with by the owner. In the case first cited a treasury note of fifty dollars was by the owner laid upon a counter, for the purpose of having it changed and paying ten cents for a glass of soda water. The prisoner seized and appropriated to his own use the entire note, and was convicted of the offense of larceny. In the second case, the prisoner received from the owner a quantity of jewelry for the purpose of enabling a customer of the former to select therefrom one article, and the residue to be returned to the owner, with the money for the article sold. The prisoner appropriated to his use all of the jewelry and was convicted of larceny. In that case the learned judge remarks : " The distinction between this class of cases, and obtaining property by means of false pretences, seems to consist in the circumstance that in the latter the owner intends to part with his title with the change of custody ; while in the former no intention of that kind exists." In the case we are considering, the facts show that Schelly did intend to part with the title to the malt, as well as the possession thereof. In the third case, Lewis induced Olason to accompany him to a bank to procure a $500 check cashed, and on the way led Olason into a saloon and there met Loomis, to whom Lewis proposed that they should throw dice for $100, which was assented to by Loomis ; whereupon Lewis asked Olason to lend him ninety dollars, saying : " I am sure to beat him again, and you can have your money back if I do lose ; I have got the check for $500, and we will go up to the bank and get the check cashed and you can have the money." In that case Judge MILLER remarks : " It is contended that the conviction was erroneous, because the prosecutor voluntarily parted with his money, not expecting to receive back the same bills, but others in their place, and hence the crime is not made out. It must be

conceded that in order to establish the offense of larceny, there must be a trespass, and without this element the offense is not complete, even although the owner is induced to part with his property by fraudulent means ; *yet if he actually intends to part with it and delivers up possession absolutely, it is not larceny.*" In the last case, *Smith* v. *People*, the prisoner procured a locket, chain and two dollars, with directions from the owner to *pawn them* and procure twelve dollars to prevent the imprisonment of her husband. All the pretences in regard to the arrest of the husband were false. The prisoner appropriated the property to his own use, and was convicted of larceny. In that case the owner did not absolutely part with the property ; she merely authorized the creation of a lien thereon. Judge ALLEN says : "The owner did not part with the property in the chattel or transfer the legal possession. The accused had merely the custody; the possession and ownership remaining in the original proprietor." It will be perceived that in all of these cases where a conviction for larceny has been sustained, the court has determined from the facts of the particular case, that there was the absence of an intention, on the part of the owner of the property, to part with the ownership, possession and control. In this controlling particular the case at bar differs with that class of cases, and the distinction rests upon principle. Schelly parted with the malt so effectually as to enable Zink to confer upon the purchaser a good title thereto.

We conclude that the evidence did not justify a conviction and the judgment should be reversed.

Judgment affirmed.