JAMES W. ELWELL et al., Respondents, v. FRANCIS SKIDDY et al., Appellants.

The master and agent of a vessel chartered her to O. C. for three consecutive voyages to Cuba and return. O. C. was to pay a specified rate of freight, for payment of which the cargo was bound; and he was to be allowed in Cuba 105 lay days demurrage, with liberty to use any portion thereof on either of the voyages. For every day's detention beyond the allowance O. C. was to pay sixty dollars per day on the termination of the charter party. In case of any accident or fortuitous cause preventing the vessel returning on her third voyage on or before June, 1st, 1870, the charter party was to be deemed canceled and void so far as it related to the third voyage. On the second voyage the vessel was detained at Cuba by the authorities, without the consent and against the wish of O. C., until June 16, 1870. Upon the two voyages ninety-two

days demurrage were used. In an action to recover demurrage and freight, *held*, that until the demurrage allowed in the charter party was exhausted, there was no liability therefor; that although, under the provisions of the charter party, the third voyage was abandoned, this did not affect the right of the charterer to use the demurrage allowed, at his option, upon the two voyages made.

On April 12th, 1870, on the second voyage, O. C. placed on board the vessel at Cuba a cargo of sugar for which the master signed a bill of lading, as received in good order, and to be so delivered in New York to the consignees named or their assignees, they paying freight as per charter party. The cargo was delivered to defendants, as assignees of the bill of lading. They were, however, simply agents of O. C., who was also owner of the cargo. Of this the agent of the vessel had knowledge at the time of delivery. *Held*, that in the absence of any agreement on the part of defendants to pay freight, they were not liable; that a promise to pay freight could not be implied as matter of law simply from an acceptance of the goods under the bill of lading.

As to whether upon the bill of lading, the acceptance, and the attending circumstances, the jury might infer a promise to pay, *quære*.

The answer alleged, that the cargo on the first outward trip was seized and confiscated by the authorities of Cuba for a violation of its revenue laws by the master, in consequence of which O. C. was compelled to pay a sum specified; and for the same reason the vessel, after receiving her cargo for the second return voyage, was detained until June 16th, 1870, in consequence of which there was a loss by drainage and waste of the sugar. These two items of damage defendants claimed a right to recoup. *Held*, that defendants were entitled to recoup, against any liability for freight, damages which had accrued by reason of a breach on the part of the master or owner of the vessel of any of the provisions of the charter party or bill of lading; and so, that a ruling of the court disallowing the items of damages set forth in the answer was error.

Also *held*, that the fact that during the detention of the second cargo there was a rise in the market price of sugar was not available to plaintiff in diminution of the damages because of a loss of sugar resulting from delay; that defendants were entitled to the delivery of the whole cargo except as diminished by natural causes in the usual time for transportation, and the damages occasioned by a breach on the part of the owners of the vessel of the contract in this respect, in the failure to deliver the portion of the cargo lost by the delay could not be reduced by profits accruing to defendants on the portion delivered, by reason of the increased market price.

(Argued April 14, 1879; decided May 20, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiffs entered upon a verdict.

This action was brought by plaintiffs, as assignees of an alleged claim for freight and demurrage, against defendants, who were agents of the owners of the cargo of the brig " Harry Virden," and who were assignees of the bill of lading.

The facts are sufficiently stated in the opinion.

*Samuel Hand,* for appellants. When the assignee of a bill of lading is a mere agent for the purpose of receiving the cargo and known to the master as such, he is not liable for freight upon his acceptance of the goods unless he expressly agrees to pay the freight. (Maclachlan on Shipping, 466; *Dart* v. *Ensign,* 47 N. Y., 622; *Ackerman* v. *Redfield,* 9 Hun, 381; *Allen* v. *Bareda,* 7 Bosw., 204; Flanders on Shipping, §§ 540, 544; *Ward* v. *Felton,* 1 East, 507; *Thoersen* v. *Kymer,* 2 M. & Sel., 303; *Bonito* v. *Mosquera,* 2 Bosw., 401; *West. Trans. Co.* v. *Barber,* 46 N. Y., 544.) The refusal to charge that the plaintiffs were not entitled to recover for demurrage was error. (Maclachlan on Ship., 465, 478, 479, 480–484; Smith's Merc. Law, 353; 17 Barb., 184; *Smith* v. *Sieveking,* L. R. [1 C. Pl.], 689; Abb. on Ship., 304; *Cross* v. *Bend.,* 26 N. Y., 85; *Morse* v. *Peasant,* 3 Abb. Ct. of App. Dec.) Defendants were entitled to recoup the loss on the sugars by the detention. (*Elwell* v. *Skiddy,* 8 Hun, 73; *Dezell* v. *Odell,* 3 Hill, 222.) The owners of the vessel were liable (and the plaintiffs stand in their shoes for a reduction of a claim for freight) for any failure to deliver the cargo within a reasonable time, except for the act of God and the perils of the seas. (*Ward* v. *Central R. Co.,* 47 N. Y., 29; *Condict* v. *Grand Trunk R'way,* 54 id., 500; *The Parana,* L. R. [1 Prob. Dion.], 452; *Fraser* v. *Tel. Con. Co.,* id. [7 Q. B.], 566; *Dale* v. *N. E. Mut. Ins. Co.,* 6 Allen, 382; *Elwell* v. *Skiddy,* 8 Hun, 73; *Beatson* v. *Elwell,* 49 N. Y., 678; 1 Wood [U. S.] Cir., 406; Maclachlan on Ship., 388–389; *Gosling* v. *Higgins,* 1 Camp., 451; *Evans* v. *Hutton,* 4 Man. & Ga., 954; *Spence* v. *Chad-*

*wick*, 59 Eng. C. L., 517; *Howland* v. *Greenway*, 22 How. [U. S.], 491; *The Griffin*, 4 Blatch., 66; *Schooner Thos. Jefferson*, 3 Benedict, 302; *Clark* v. *Barnwell*, 12 How. [U. S.], 272; Maclachlan on Ship., 396; *Bixby* v. *Bennett*, 3 Daly, 225; 1 Pars. on Ship., 311.) The court erred in excluding proof in respect of the outward cargo of shooks confiscated because of the use of the false consular manifest by the master. (*Gleadell* v. *Thompson*, 56 N. Y., 194; *Davis* v. *Pattison*, 24 id., 317, 320; 1 Pars. on Ship., 206; *Schiefflin* v. *Harvey*, 6 J. R., 171; *Hinsdell* v. *Weed*, 5 Den., 176; Redfield on Carriers, § 28.)

*Robert D. Benedict*, for respondent. Defendants became liable for the freight from the fact of their receiving it under the bill of lading of which they were the assignees with notice of the claim for freight. (1 Pars. on Ship., 202; 3 Kent, 225; *Merriam* v. *Funck*, 4 Den., 110; *Morse* v. *Peasant*, 3 Abb. Ct. of App. Dec., 321; *Dart* v. *Ensign*, 47 N. Y., 622.) The court was right in excluding from the case the claim arising out of the confiscation of the shooks belonging to Mr. O'Callaghan, the charterer. (2 Rev. Stat., 352, § 18, sub. 2; *Seymour* v. *Davis*, 2 Sandf., 246; *Deming* v. *Kemp*, 4 id., 152; *Whitbeck* v. *Skinner*, 7 Hill, 53–55.) The damage claimed by the defendants being the result of the delay of the ship merely, the question as to what was the cause of the delay was properly submitted to the jury. (*Wibert* v. *Erie R. R. Co.*, 12 N. Y., 251; *The Onrest*, 1 Ben., 447, 457; 6 Blatch., 533; *Nelson* v. *Stephenson*, 5 Duer, 538.)

DANFORTH J. On the 13th of September, 1869, a charter party was entered into between Walter Collins as master and agent of the vessel Harry Virden of the first part, and C. M. O'Callaghan of Philadelphia of the second part. By it O'Callaghan chartered the vessel for three consecutive voyages, the *first* from Canada to Cardenas, and thence to New York; the *second*, and *third* to Cardenas, and was to

pay on the *second* homeward cargo fifty cents per 100 pounds net custom house weight of sugar delivered on discharge thereof. He was to be allowed in Cuba 105 running days for the three voyages, with liberty to use any portion of those days on either one or the other of the voyages, and for each day of any longer detention, was to pay sixty dollars, on the termination of the charter party.

It was provided however that in the event of any accident or fortuitous causes preventing the vessel from proceeding to New York, on her *third* voyage, on or before the 1st day of June, 1870, the charter party was by consent of both parties to be deemed canceled and void, so far as relates to such third voyage.

On or about the 12th of April, 1870, at Cardenas, O'Callaghan placed on board the vessel for its second cargo, a quantity of sugar amounting to 1,053,983, pounds, for which Collins, the master signed a bill of lading, as received in good order and condition, and to be so delivered in New York (the dangers of the seas only excepted) unto Messrs. Brown Brothers & Co. or to his or their assigns, he, or they paying freight as per charter party. The complaint sets out this charter party and bill of lading, and for cause of action alleges seventeen days demurrage amounting to $1,020, freight earned on the cargo $4,848.19, and alleges that the cargo is bound " by the terms of the charter party " for payment of these sums ; that the bill of lading was assigned to the defendants, and they thereafter became bound to " pay the freight and demurrage," and they thereupon " agreed with the master of the vessel, and the plaintiffs as her agents, that they would pay the freight and demurrage due, as above mentioned." The plaintiffs allege that this claim has been assigned to them. The answer puts in issue the alleged promise, and sets up (1st:) that O'Callaghan for the first outward trip under the charter party furnished the vessel a cargo of sugar box shooks, which were seized by the Cuban authorities, and confiscated by reason of a violation by the master of the vessel, of the revenue laws of that

country, in consequence of which O'Callaghan had to pay $2,559.37 to the Cuban treasury. (2d.) That for the same reason the vessel was detained in Cuba from 12th April to 16th June, and 53,282 pounds of sugar of the value of $2,397.60, over and above the usual loss by leakage and handling on such voyages was never delivered at New York, but was lost, and both of these sums the defendants claim a right to recoup in this action.

Upon the trial exceptions were taken to the refusal of the court to admit certain evidence in regard to the seizure and confiscation of the sugar box shooks, and to the charge, and to refusals of the court to charge as requested by the defendant's counsel. A verdict having been rendered for the plaintiffs by direction of the court, and judgment thereon affirmed by the General Term, the defendants upon those exceptions ask for a reversal of the judgment.

*First :* The defendants asked the court to charge that the plaintiffs were not entitled to recover anything for demurrage. This was refused and the case submitted to the jury as one in which the evidence would warrant a finding, for that item in favor of the plaintiff. In this we think the court erred. The provisions of the charter party were such, that the *third* voyage was by mutual consent, abandoned, for the event had happened without fault of the charterer, and against his wish, which prevented the vessel from proceeding to New York on her third voyage, on or before the 1st of June, and that portion of the charter party therefore which related to the third voyage, was by consent of both parties to be deemed void and canceled. This however could not affect the right of the charterer to distribute the 105 lay days at his option, between the two voyages, which were made, and in such proportion upon either as he chose. He had used seventy-two days on the first trip, and twenty on the second, in all ninety-two (92) days, leaving unused thirteen (13) days of the 105, and until all were consumed, and a delay not warranted by the charter party had occurred, there could be no liability. As this view of the question

rests on undisputed facts, it is unnecessary to consider whether the charge in other respects in regard to this item, was correct or not. A new trial must therefore be granted, but some other questions are presented, which if a trial is had, may again arise.

*Second:* The charge of the court as to liability of defendants for freight, also seems to be erroneous. The trial judge stated to the jury that this claim arose under the charter party, and that they must look to it, and the bill of lading for the rights of the parties, and after stating some of the provisions of the charter party, and the duty of the master under the bill of lading "to deliver the goods to the consignee or agents of the consignee, he or they paying freight," said : "If in reality these sugars were delivered to Skiddy & Co., although they had no interest in the sugars, and were as has been stated the mere agents or factors, which probably more exactly expresses the relation, yet if the sugars were delivered to them, and they received them under that bill of lading, they are liable for the freight," and after referring to the fact that the defendants gave directions in respect to the storage of the cargo, adds: "there was, therefore, I shall charge you, as matter of law, a delivery of these sugars to Mr. Skiddy, or to his firm as consignees or indorsees of this bill of lading, and they became by the act of accepting the sugars, and directing them to go to Baxter's stores, liable for the freight, and you will take that as the law on that point." To these propositions the defendant's counsel excepted.

The court declined to charge as requested : "That if before delivery to Skiddy & Co. of the sugars, the agents knew that the defendants were acting merely as agents for the owners of the sugars, and if no contract was concluded that the cargo should be delivered without payment of freight on defendants personally undertaking to pay the freight, the defendants are entitled to a verdict."

There was evidence which would have warranted the submission of such a question to the jury, and the court as we

have seen assumed that the relation of the defendants to the property was that of agents or factors merely.   I think upon these assumed facts the court should have submitted the case to the jury as one for them to determine upon all the evidence, whether the delivery and acceptance of the goods, was upon an agreement or promise to pay.   As the case now stands the defendants are held, not by virtue of an express promise, but by virtue of a promise which the court said the law implied from the acceptance of the goods under the bill of lading.

We must bear in mind that the charter party contains an express promise on the part of the shipper to pay the freight. In *Moorsom* v. *Kymer*, (2 M. & S., 303,) the assignee of a bill of lading was held not to be liable upon an implied promise to pay the freight, because by the charter party the charterer had bound himself to pay it by an express agreement under seal.   And in *Trask* v. *Duvall*, (4 Wash. C. C. R., 181,) the same result seems to be reached, viz. : that the assignee of the bill of lading, who received the goods is bound to pay the freight, unless the assignor is bound by charter party to pay it.

We have in the case before us then, a shipper, or consignor, who is the owner of the goods named in the bill of lading ; an assignee of the bill of lading who is the agent or factor of the shipper, with no personal interest in the goods ; and goods actually delivered to the assignee without payment of the freight.   It may be conceded that in such a case the master of the vessel has a lien on the cargo for his freight, and may retain it until paid, but that is not in question here. The freight was delivered, as the trial court held, and this action is on a promise, sought to be implied therefrom, to pay.

In *Barker* v. *Havens*, (17 J. R., 234,) the carrier sued the consignor for freight, and it was held that his right to recover, depended on the legal import of the clause in the bill of lading, by which it was stipulated that the goods should be delivered to certain persons therein named, they

paying freight for the same, one penny sterling, per pound, and SAVAGE, Ch. J., held that the plaintiff was entitled to judgment, and his reasoning, with that of Lord ELLEN-BROUGH, in 13 East, 565, to which he refers, seems to show that when the consignee is the correspondent, factor or agent of the consignor, and the latter is the owner of the goods, a construction should be given to the clause in question different from that which it should receive if the consignor was not the owner of the goods, or that they were not shipped on his account.

In *Sanders* v. *Van Zeller*, (4 Ad. & Ellis, [N. S.], 260, 294,) it is held that the *law* would not imply a contract to pay freight, from the acceptance of goods, under a bill of lading with the usual clause, but that a jury may infer from such acceptance a promise to pay. (See also Maclachlan's Law of Merchant Shipping [2d ed.], 466.) It may be that upon the bill of lading, the receipt of the sugars and evidence of negotiations and circumstances attending the delivery of the sugars, the jury would find against the defendants as upon a contract, but the case in this aspect has been withheld from them.

In *Davis* v. *Pattison*, (24 N. Y., 321,) the court says it is not every case of the receipt of goods even under a bill of lading that makes the recipient liable for the freight, simply by reason of such receipt, and in language applicable to the point now before us, and the one next to be considered, say, (p. 322) "It is assumed that he was merely the agent of the owner, to receive, pay charges, or forward or sell the property. This being so, the acceptance of the property by the agent, was an acceptance by the owner, and an action would lie against the owner upon the assumpsit implied from his acceptance. The fact that the law gives an action against the agent, *if it does so*, when acting and receiving goods as consignee, does not discharge the principal. The carrier had his election to retain the property until payment of freight, or having waived this right, and delivered it, to look to the consignee—agent, or his principal. If the action had

been against the principal the doctrine of recoupment would apply ; and it is not reasonable that his rights and remedies should be greater, or more beneficial than those against the principal." From this it would seem then to follow that against any claim for freight, the defendants were entitled to recoup such damages as accrued by reason of the breach, by the master or owner of the vessel, of any of the provisions of the charter party, or bill of lading. (*Westlake* v. *De Graw*, 25 Wend., 669; *Whitbeck* v. *Skinner*, 7 Hill, 53; *Batterman* v. *Pierce*, 3 id., 173; *Rowley* v. *Woodruff*, 2 Lans., 419; *Ogden* v. *Coddington*, 9 E. D. Smith, 317; *Hinsdell* v. *Weed*, 5 Denio, 172; *Boggs* v. *Martin*, 13 B. Monroe, 239.) The consignor or shipper in the bill of lading is the same party who executed the charter party as charterer, doing business in Philadelphia under the name of C. M. O'Callaghan, and in Cardenas, under the name of C. O'Callaghan, and the defendants were as the mere agents or factors of O'Callaghan, having no personal interest in the sugar, liable to pay only so much freight as should be fairly due the vessel under the contracts. Such is the theory of the complaint; it sets out both the charter party, and the bill of lading, alleges freight earned, and demurrage due under them, and a promise on the part of the defendants to pay the freight and demurrage so due. The liability of the defendants stands not only on the bill of lading, but on the charter party, which to some extent is by reference, incorporated into it, and alone determines the amount of freight to be paid.

Indeed the learned counsel for the respondents, concedes, " that an agent who is sued, to compel him to pay a claim for which he has made himself liable, can recoup any claim which his principal would have arising out of the contract on which the agent is liable," but contends that he " cannot recoup a claim of the principal, arising out of another contract." This is a correct statement of the law, and does we think, embrace this case. There could be no recovery against the defendant except for the bill of lading, and the

charter party, and it is for breach of the provisions of those instruments, that the claim for damages on the part of the defendant arises.

1st. It was established by evidence that the loss by waste and leakage of the sugar covered by the bill of lading, amounted to many thousand pounds in excess of the usual and ordinary amount of loss from those causes, on such a cargo, in consequence of the unusual detention of the vessel at Cardenas, after it received the cargo ; that this detention was owing to no act or omission of the shipper, but in one view of the evidence at least, was attributable to the violation by the master of the revenue laws of Cuba, and the defendants asked the court to charge the jury that they were entitled to have the value of the amount so lost allowed in reduction of the plaintiffs' claim for freight. The trial court held that this was "a clear item of damage." It should therefore have been allowed, and the instruction asked for given, unless it occurred from the act of God, or public enemies, or some event expressly provided for in the charter party or bill of lading, and the burthen of showing this was upon the plaintiff. For the loss by waste or leakage of the sugars, during the time the vessel was detained by reason of the master's fault, the owners were liable. But it was not shown, and the court, refusing to charge as requested, charged, that if the detention of the vessel could be fairly and reasonably attributed to the act of the captain in causing the consular manifest to represent a less quantity of shooks than the ship had on board (the violation of the revenue law above referred to), the defendants are entitled to the damages claimed. This was not sufficient, for as to that part of the sugar there was entire failure to deliver.

2d. Evidence was introduced by the plaintiff in reply to the defendants' case for recoupment, showing that during the detention the market price of sugar had risen one-fourth of one per cent per pound, amounting to $2,310.86, upon that part of the sugar actually delivered to the defendants. And the defendants' counsel requested the court to charge the

jury that the plaintiffs " are not entitled to any allowance (in abatement of defendants' cross-demand) for supposed rise in the price of sugars between shipment, and the sale of the sugars delivered." The court declined so to charge and the defendants counsel excepted. We think this did not form an item for the consideration of the jury, yet it was one which might have had a decided influence upon the verdict. The defendants were entitled to have delivered to them the whole cargo, except as it had diminished by the effect of natural causes in the usual time for transportation. Under the evidence and charge of the court, and its refusal to charge as requested, the jury may have found that a portion of the cargo was lost by reason of a detention caused by the master's fault, or attributable to his act, but that the balance of the cargo had in the same time so risen in market value as to make up the loss. It was clearly proven that less sugar was delivered to the defendants than they were entitled to, and the court held very properly that this was a clear item of damage to be paid for at the invoice price, in gold, with interest. Yet the jury may have found that the defendants received for that part of the sugar which was delivered, a larger price than they would have got, but for the detention complained of, and that, therefore, they gained by the master's default. Such a claim cannot be allowed.

• The question was as to the amount of damage by reason of the plaintiffs breach of contract to deliver, and this could not be reduced by supposed profits accruing to the defendants from the rise in market price of such portion of the cargo, as was delivered. A contrary rule would open many collateral inquiries, which if entered upon could lead to no satisfactory result. We think the court should have charged the jury as requested.

3d. The defendant was also entitled to have allowed in reduction of the amount due for freight the loss incurred by the shipper, defendants' consignor, in consequence of the seizure and confiscation of the sugar box shooks on the first voyage of this charter party, if it was occasioned by the master's act.

The plaintiffs might have sued the shipper upon the charter party, for the freight in question, in which case there can be no doubt but that the latter would have been entitled to recoup the damages sustained by him in consequence of the master's violation of the revenue laws on the first voyage. (*Parsons* v. *Ogden*, 4 Blatchf., 99; Code, § 152; *The Griffen*, 4 Blatchf., 203, affirmed, *Howland* v. *Greenway*, 22 How. [U. S.], 491; Redfield on Carriers, 247.) The same rule applies here.

The judgment should be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.