FRONTIER S. S. CO. v. CENTRAL COAL CO.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916.)

No. 2243.

SHIPPING ☞150—ACTIONS—BILL OF LADING—PRESUMPTIONS.

Defendant entered into a contract with a shipping company to carry its coal for a whole season. Such company contracted with a second company to transport defendant's coal, and the second company's manager engaged one of libelant's steamships for such purpose. The bill of lading issued by the master of libelant's vessel referred to the contract for the freight rate. In case of previous shipments in libelant's vessels, defend-

ant paid the company with which it contracted, and such company paid the actual carriers. *Held* that, while the law implies a promise to pay the freight, where there is a bill of lading, and acceptance by the consignee is proven and unexplained, yet, in view of the knowledge of libelant and the previous method of freight payments, such implied promise was rebutted, though defendant accepted the coal transported in libelant's ship, and the bill of lading issued by the master provided for payment at the agreed freight rate.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 226, 511; Dec. Dig. ⚬⚬150.]

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by the Frontier Steamship Company against the Central Coal Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Appellant, a New York corporation, is engaged in transportation upon the Great Lakes. Appellee is a corporation of Wisconsin, and is a large dealer in coal. Appellant, on September 25, 1912, brought this suit against appellee in the District Court to recover freight charges earned by its steamer Munro in carrying coal from Lorain, Ohio, and delivering same to appellee at Milwaukee, Wis. The record discloses the following facts and circumstances with reference to the transaction:

Appellee contracted with Franklin Steamship Company and Fremont Steamship Company, jointly, for the transportation of all coal which should be received by it at Milwaukee and Green Bay, Wis., and Escanaba, Mich., during the navigation season of 1909, and agreed to pay freight at the rate of 40 cents per ton for coal delivered at Milwaukee, and 35 cents for coal delivered at the other two ports. Said Franklin and Fremont Companies subsequently, on May 27, 1909, through Herbert K. Oakes, their respective manager, entered into a contract with the Weston Transit Company, through W. M. Mills, its manager, whereby the latter company agreed to carry a part of such coal. The provisions of this latter contract essential to a consideration of the case are as follows:

"For and in consideration of the rates of freight hereinafter named, the party of the second part [Weston Transit Company] hereby agrees to transport from Lake Erie ports, during the season of navigation of 1909, all coal required by the Central Coal Company, of Milwaukee, Wis., * * * and said first parties agree to furnish such coal to said second party. * * * It is hereby agreed that the rate of freight to be paid for transporting said coal from Lake Erie ports shall be as follows: To Escanaba, Michigan, 35 cents per ton of 2,000 pounds; to Green Bay, Wisconsin, 35 cents per ton of 2,000 pounds; to Milwaukee, Wisconsin, 35 cents per ton of 2,000 pounds. All of said coal to be consigned to Central Coal Company, and unloaded at its docks at said ports."

At the time this contract was executed, appellant, through its agent, the Lake Transportation Company, was advised that the Franklin and Fremont Steamship Companies had the contract for carrying all of appellee's coal delivered at its docks at Milwaukee, Green Bay, and Escanaba. The contract follows the terms of and makes evident reference to the contract between appellee and the two steamship companies—Franklin and Fremont. So that there can be no doubt that both Mills and Speddy, managers respectively of the Weston and Frontier Companies and the Lake Transportation Company, knew that appellee's contract was with the so-called Oakes companies.

Under the above contract the Weston Transit Company transported and delivered to appellee during the season coal aggregating about 115,000 tons. Having but three boats of its own, it found it necessary to engage additional vessels for carrying this tonnage. Its manager, Mills, being also manager of appellant, as well as of other steamship companies, was in a position to and did place at the disposal of the Weston Transit Company, in performing its said contract of carriage, a number of boats which he thus controlled, in-

cluding appellant's steamer Munro. It also appears that the Lake Transportation Company as agent of appellant and under the management of said Mills, had to do with directing the movements of the latter's boats. On November, 17th and 30th respectively, the Munro, at the direction of the Lake Transportation Company upon instructions from Mills, transported two cargoes of said coal, aggregating between 19,000 and 20,000 tons, from Lorain, Ohio, to Milwaukee, as above stated, where appellee presented the bills of lading which had been issued by the master of the ship, and received the coal at its docks. It appears from the evidence that on all coal transported by appellant's boats and delivered to appellee previous to the two November cargoes in question, appellant received its freight charges from the Lake Transportation Company, the latter having received the same from the Franklin and Fremont Steamship Companies, to whom appellee had contracted to make payment for the carriage of its season's coal. No demand for the freight charges was made upon appellee by the master of the ship or appellant at the time of making delivery of these Munro cargoes. Thereafter, on November 24th and December 7th, as it had done in all previous like instances, and without any notice other than the said bills of lading that it was expected to pay appellant the freight therefor, appellee in good faith paid said freight charges to the Franklin and Fremont companies. Appellant, not having received the freight thus earned by its steamer Munro, brought suit to recover the same from appellee, basing its suit upon the bills of lading covering said cargoes. These bills of lading were in the usual form. One of them, omitting its number and date, is as follows:

"Shipped in good order and condition by the Lorain Coal & Dock Company for account and at the risk of whom it may concern on board the steamer J. G. Munro, whereof ———— is master, bound for Milwaukee, Wis., the following articles as here marked and described, as addressed on the margin, or to his or their assigns or consignees, upon paying the freight and charges as noted below (danger of navigation, fire and collision excepted).

"In witness whereof the master of said vessel hath affirmed to ———— bills of lading, of this tenor and date, one of which being accomplished, the others to stand void.

| Consignee and Destination. | Description of Articles |
|---|---|
| Central Coal Co., | 400 |
| Milwaukee, | 786........ Net tons #8 Pittsburg |
| Wis. | Crescent ¾ coal |
| "Rate of freight hereon is as agreed per net ton. | C. E. Sayre." |

The District Court found the issues for the respondent and dismissed the libel, with costs. The decision of the court that the receipt of the cargoes of coal with knowledge of the bills of lading set out in the libel was not conclusive as to appellee's liability and that libelant was in law chargeable with knowledge of all the facts pertaining to respondent's relation to the transportation of the two cargoes in question, is assigned as error.

John B. Richards, of Buffalo, N. Y., for appellant.
Frank S. Masten, of Cleveland, Ohio, for appellee.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). It is appellant's contention that the receipt of the bills of lading by appellee and its acceptance of the two cargoes of coal covered thereby created an absolute liability on appellee's part to pay the freight charges to appellant. It is also contended that appellee is liable for the freight as consignor. It is no doubt the general rule that the fact that a consignee named in a bill of lading received by him which provides that the cargo is to be delivered upon his paying the freight, who accepts the goods described therein, is evidence sufficient to establish an implied promise to pay the freight charges to the carrier or shipowner,

in the absence of other qualifying circumstances. Philadelphia R. R. Co. v. Barnard, Fed. Cas. No. 11,086; Hatch v. Tucker, 12 R. I. 501, 34 Am. Rep. 707. In the latter case, after reviewing the authorities, both English and American, the court concludes that:

"The weight of authority, therefore, seems to be that where there is a bill of lading, and the acceptance by the consignee is proven and unexplained, the law will imply a promise to pay freight."

To the same effect is Union Pacific R. Co. v. American Smelting & Refining Co., 202 Fed. 720, 723, 121 C. C. A. 182, citing Hatch v. Tucker, supra; Cock v. Taylor, 13 East, 399; Dougal v. Kemble, 3 Bing. 383; Merian v. Funck, 4 Denio (N. Y.) 110; Pelayo v. Fox, 9 Pa. 489; Blanchard v. Page, 8 Gray (Mass.) 281; North German Lloyd v. Heule (D. C.) 44 Fed. 100, 10 L. R. A. 814; Taylor v. Fall River Iron Works (D. C.) 124 Fed. 826; Neilsen v. Jesup (D. C.) 30 Fed. 138; Gates v. Ryan (D. C.) 37 Fed. 154; Davidson v. City Bank, 57 N. Y. 81, 85; Grant & Stone v. Wood, 21 N. J. Law, 292, 295, 47 Am. Dec. 162.

And the reason for this rule, as said by the court in Union Pacific R. Co. v. American Smelting, etc., Co., supra, "is that the consignee accepts the goods with knowledge that the carrier looks to him for payment of the transportation charges and waives his lien for them by delivery in reliance upon the consignee's implied promise, evidenced by his acceptance of the goods, that he will pay the charges." The same implication arises if there be no bill of lading, provided the consignee accepts the goods knowing that the carrier expects him to pay the charges. Same case, citing a number of authorities.

In either case, the acceptance of the goods under such circumstances constitutes but prima facie evidence of such promise on the part of the consignee. The question then is: Are the bills of lading here involved, notwithstanding the other facts bearing upon that question, to be taken as conclusive evidence of such knowledge on the part of appellee? If not, and the other evidence in the record is considered, it is very clear, not only that appellee had no such knowledge, but also that, so far as the record discloses, there was wanting sufficient notice to advise appellee that appellant, at the time of making delivery of the Munro cargoes in question, had any intention of holding appellee for the freight charges.

It is legally deducible from the evidence that appellant was advised of the circumstances attending the whole transaction. Its agent, the Lake Transportation Company, was actually told by Oakes, manager of the Franklin and Fremont Steamship Companies, that those companies had the whole contract for carrying appellee's coal for that season. As such agent, it received all payments for other cargoes of said coal from those companies. The contract between those companies and the Weston Transit Company discloses the existence of the original contract. Mills, manager of appellant, signed that contract, while the bills of lading themselves make such reference to that contract as to charge appellant with knowledge of its terms. Thus appellant was chargeable with knowledge that appellee had contracted with the Franklin and Fremont Steamship Companies for carrying

all its season's coal, that the latter two companies had contracted with the Weston Transit Company to carry part of that coal for them, and that through their common manager appellant was assisting the Weston Transit Company in that service.

These facts, we hold, were sufficient to overcome any presumption which may have arisen from the circumstances attending the bills of lading in the premises.

The judgment of the District Court is therefore affirmed.