# West Jersey & Seashore R. R. Co., Appellant, v. Whiting Lumber Co.

*Railroads—Carriers—Suit for freight charges—Interstate commerce—Affidavit of defense.*

In an action by a railroad company to recover freight charges on an interstate commerce shipment where a statement sets forth a uniform bill of lading issued by all railroad carriers under the mandate of the federal law and containing notice of the various stipulations which, after approval in the manner provided by law, become binding upon every party concerned in the shipments, it is no defense that the defendant never received a copy of the bill of lading nor affirmative notice of its contents. The rates established by the schedule are matters of positive law and shippers and consignees alike are charged with knowledge of them.

A consignee is under no obligation to receive or accept a shipment consigned to it, where such a consignment was in no way sought or ordered by it or when it is not in accordance with its contract, but when it has exercised an act of dominion over it, consistent only with the ideas of its acceptance, it will be liable for the freight charges thereon.

*Carriers—Storage charges—Affidavit of defense.*

An affidavit of defense is sufficient to a demand for storage charges when it avers that such charge was uncalled for and un-

reasonable. Whether it was or was not, under all the circumstances of the case, is not a pure question of law which the court can dispose of, but is a mixed question of law and of fact to be submitted to a jury on proper instructions from the trial judge.

Argued Oct. 8, 1918. Appeal, No. 40, Oct. T., 1918, by plaintiff, from order of C. P. No. 4, Philadelphia Co., December Term, 1913, No. 321, discharging rule for judgment for want of a sufficient affidavit of defense in the case of The West Jersey & Seashore R. R. Co. v. Whiting Lumber Co. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit for freight charges. Before CARR, J.

Rule for judgment for want of a sufficient affidavit of defense.

The opinion of the Superior Court states the case.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Sharswood Brinton,* for appellant.—A consignee who has exercised rights of dominion over a shipment is liable to the carrier for his lawful charges thereon: P. R. R. Co. v. Descalzi, 59 Pa. Superior Ct. 614.

The defendant must be charged with knowledge of the existence of a bill of lading which the law requires the carrier to issue in interstate shipments: P. & R. Ry. Co. v. Parry, 66 Pa. Superior Ct. 49; P. & R. Ry. Co. v. Baer, 56 Pa. Superior Ct. 307.

*Frederick H. Warner,* for appellee.

OPINION BY HEAD, J., February 28, 1919:

This appeal comes from an order of the learned court below discharging a rule for judgment for want of a sufficient affidavit of defense.

The plaintiff is a railroad carrier engaged, inter alia, in interstate traffic. The shipment here in question was

of that class.  Its point of origin was in the State of Alabama; its destination in the State of New Jersey.  The defendant was and is a corporation in the last-named state and was the consignee of the carload of lumber which was transported from the point of origin to that of destination by the plaintiff and its antecedent carriers.

The plaintiff sues to recover the balance of a sum of money claimed to be due to it from the defendant consignee made up principally of three items, to wit: freight, $212.26; demurrage, $107; storage, $271.  If the defendant be liable at all, under the law, there would seem to be no question of fact raised by the pleadings that would result in its escape from liability for the first two items named.  The freight rate and the demurrage charges are both fixed and regulated by positive law.  They do not result from any private contract between the carrier and either the shipper or the consignee.  The carrier company is obliged to collect for both freight and demurrage at the rates fixed by the law and can accept no less.  The party liable to pay must pay these rates so fixed and cannot be called upon to pay more.  We then turn to the consideration of the question whether or not the defendant, the consignee of the carload of lumber which was transported, is and was liable under existing law for the payment of the freight and demurrage charges sued for in this action.

We may agree that primarily the shipper in Alabama who delivered the carload of lumber to the initial carrier was responsible to it or any later carrier for the lawful charges resulting from the transportation of the car.  But, it does not follow, under the facts we shall now state, which are apparent from the pleadings, that the consignee did not also become liable.  The car was safely transported, with reasonable diligence, to its point of destination and delivery thereof could have been made to the consignee named in the bill of lading, to which we shall presently refer, had it not been for the receipt by

the carrier, while the car was enroute, of the following letter from the defendant: "Whiting Lumber Company, General Office, etc., Phila., 7/8/10. Local Freight Agent, P. R. R. Co., Camden, N. J., Dear Sir:—You should receive from Robinson, Alabama, billed to ourselves, car 38495 loaded with oak flooring. On arrival please deliver this car to the order of H. Humphreys & Co., who will pay freight charges and unload the car. Yours truly, Whiting Lumber Co." It thus becomes apparent the defendant had notice of the shipment of the car, that it was loaded with oak flooring, that it was the consignee, and it was advised of the number of the car, and the probable date of its arrival. With the knowledge of all these facts it directed the carrier company,—which had no knowledge of any other relation occupied by the defendant, save that of consignee—to deliver the lumber to an entire stranger to the bill of lading, nominated by defendant with the promise, at least implied, that such nominee would accept the shipment, unload the car, and pay the freight. It appears to be clear to us that by the exercise of such an act of dominion over the subject of the shipment the defendant company, in the eye of the law, accepted that shipment and undertook to control its further destination in the manner stated. This, in our judgment, under all of the authorities, would constitute an acceptance by it of the shipment and render it liable for the payment of the freight without reference to the bill of lading, to which we will now momentarily advert. That bill was what is known as a uniform bill of lading issued by all railroad carriers, under the mandate of the Federal law, and contained printed notice of the various stipulations which, after approval in the manner provided by law, became binding upon every party concerned in the shipment. It declared, inter alia, "the owner or consignee shall pay the freight......and all other lawful charges accruing on said property and if required shall pay the same before delivery." We do not regard as material or important the averment of the defendant that it never

received a copy of the bill of lading or affirmative notice of its contents. It will only be necessary to make the following brief quotation from the opinion of our Brother PORTER, in Railway Company v. Parry, 66 Pa. Superior Ct. 49: "In reply to these particular averments the affidavits set up that the defendant demanded 'that the said act of congress mentioned in paragraph 1 of the plaintiff's statement, if it be material, be proved'; and as to the rates and charges averred that the defendant had no knowledge of the same and demanded that the same be proved, if material. It is not necessary to treat seriously these averments of the affidavit. This was an interstate shipment and the courts were bound to take notice of the act of congress, regulating interstate commerce. The rate for transportation was not a subject of contract, it had become a matter of positive law, and shippers and consignees alike are charged with knowledge of the rates and charges to be paid and are not entitled to exemption from compliance therewith; it is not merely the regulation of the carrier; it is the tariff established by law." We are of opinion, therefore, that as to the two items of the plaintiff's claim already referred to, the defendant has failed to show in its affidavits a substantial legal defense. The plaintiff, therefore, should be entitled to judgment for the amounts of these items. Before leaving this phase of the case, however, we perhaps should advert to a question to which considerable attention has been given in the briefs of counsel. That defendant had ordered a carload of some kind of lumber to be shipped to it from Alabama is clear. If the order was in writing a copy of it has not been attached to the affidavit. That affidavit admits "the defendant had ordered......a carload of chestnut wood to be shipped to Camden, New Jersey. The said Adler-May Company however by mistake forwarded in attempted compliance with this order a carload of red oak, etc." The rights of one designated as a consignee of a shipment, upon its arrival at the point of destination, are clear enough. It is under no obliga-

tion to receive or accept a shipment consigned to it where such consignment was in no way sought, requested or ordered by it.   The plain alternative would be to simply reject the tendered shipment and thus advise the carrier company it must look for its freight, etc., either to the consignor or to the shipment itself upon which, under the law, it would be entitled to a lien for transportation charges.   It is clear to us this defendant did not reject the shipment.   On the contrary, as we have stated, it exercised an act of dominion over it consistent only with the idea that it had accepted it, but wished it to be actually delivered to its nominee instead of to itself.   We are in the dark as to the sizes of the lumber actually shipped or the purposes for which it was intended.   Certainly we may take cognizance of the fact that oak lumber is not chestnut lumber.   Whether or not the defendant would have been under any obligation to pay to the consignor anything under the circumstances had it chosen to stand upon its rights, we need not consider.   The case in this respect is not unlike, although perhaps, not ruled by Railroad Company v. Descalzi, 59 Pa. Superior Ct. 614.   The contention there arose over the shipment of a carload of melons.   A carload of melons was transported by the carrier and delivery tendered to the consignee. Upon inspection of the contents of the car the defendant refused to receive the same on the ground that the melons shipped were not of the size or quality ordered.   The carrier sued for "the payment of demurrage, track storage and freight charges" remaining due after the application to the account of the fund produced by the sale of the melons.   Speaking of the plaintiff's contention in that case, which is practically the same contention here relied on, his honor, Judge FRAZER, then presiding in the Common Pleas Court of Allegheny County, stated in his opinion as follows: "As a general proposition of law this contention is correct; at least where the defense is that the articles shipped were not of the grade ordered by the consignee as claimed in this case.   In such cases a delivery

to the carrier is a delivery to the purchaser and the consignee must look to the consignor for any defect in the articles or goods consigned." We do not feel called upon to pursue this branch of the case farther. The affidavit of defense, as we have stated, admits the defendant had ordered "a carload of chestnut wood." It admits "a carload of red oak (wood)" was received. We are not concerned with the conclusion that red oak is a material of an entirely different nature and description from chestnut wood.

As to the third item of the plaintiff's claim, to wit, for 271 days' storage in addition to the charge for demurrage already referred to there is this to be said. Section 1 of the Interstate Commerce Act provides in part as follows: "All charges made for any services rendered or to be rendered shall be just and reasonable; and any unjust and unreasonable charge for such services or any part thereof is prohibited and declared to be unlawful." There is a distinct and unqualified averment in the affidavit of defense that the plaintiff's charge for 271 days' storage was an uncalled-for and unreasonable charge. Whether it was or was not, under all of the circumstances of the case, seems to us to be, not a pure question of law which the court should dispose of, but a mixed question of law and fact to be submitted to a jury under proper instructions from the trial judge. It may be that, as the main question of law over which the earnest contention in the case arose has been disposed of, the parties may be able to agree on some amicable disposition of what remains. However, we must dispose of the record as it is presented to us.

The order of the court below discharging the rule for judgment is reversed and set aside and the said rule is reinstated with leave to the plaintiff to move for judgment for the two items of freight and demurrage, and to exercise its option to go to trial for the remaining portion of its claim. The costs of this appeal to be paid by the appellee.