# Long Island Railroad Co. v. Keystone Iron and Metal Co.

*Agency—Personal liability on contract for principal.*

1. An agent who makes a contract in his own name without disclosing his agency is personally liable to the other party to the contract.

*Assumpsit—Affidavit of defence—Averments of ignorance.*

2. An averment in the affidavit of defence to the effect that affiant is ignorant of the facts contained in a paragraph of the statement of claim, to which the averment is directed, and, if material, demands proof thereof, is equivalent to an admission of the averment in the statement.

*Railroads—Interstate Commerce Act—Averment in affidavit to action for freight that charges are unreasonable.*

3. The reasonableness of charges made by a railroad company in accordance with the terms of the Interstate Commerce Act and based upon proper filed tariffs, cannot be tried in an action of *assumpsit* against the shipper without preliminary resort to the Interstate Commerce Commission.

*Railroads—Selling freight for storage charges.*

4. Where a railroad sells goods for storage charges, it is its duty to sell them at the best market price available at the time and place of sale, and whether the company did so sell them is a matter for the jury to pass on.

*Railroads—Reasonableness of retention of goods.*

5. Whether, in any particular case, it was reasonable for the railroad to allow the goods to remain on its cars more than five days is a matter for the jury to pass on.

*Railroads—Storage of goods.*

6. Under a condition of the bill of lading providing that if the party entitled to receive the goods would not remove them, they could then be kept in the car or place of delivery of the carrier, subject to the tariff charges for storage, or, at the option of the carrier, "may be removed to and stored in a public or licensed warehouse at the place of delivery or other available place at the cost of the owner," the carrier may, after a reasonable time, transfer the goods to some available place which, under the circumstances of the case, is reasonable; but whether or not the goods were transferred to a place reasonable under all the circumstances is for the jury.

Rule for judgment for want of sufficient affidavit of defence. C. P. No. 5, Phila. Co., Dec. T., 1922, No. 3795.

*C. Myers,* for plaintiff; *W. W. Crawford,* for defendant.

SMITH, J., Nov. 15, 1924.—This matter grows out of a rule for judgment for want of sufficient affidavit of defence. The defence set up in the affidavit is two-fold: First, the defendant avers that he was acting only as agent for the S. O. Bell Sales Corporation, Woolworth Building, New York City, for the purchase of the wooden boxes involved, and that, therefore, there can be no liability; and the second defence offered is that the demurrage, storage and other expenses are unreasonable and improper charges.

It is horn-book law that in *assumpsit,* if the defendant discloses that he is only acting as agent for another, that in itself absolves him from any liability. In the affidavit of defence, however, the defendant, in paragraph two, avers:

"Defendant denies that on Sept. 1, 1921, he delivered to the Pennsylvania Railroad the two carloads of empty wooden boxes, as averred in paragraph two of plaintiff's statement of claim, and consigned to the S. O. Bell Soap Company, but, on the contrary, he avers that he was acting as agent for the S. O. Bell Sales Corporation, Woolworth Building, New York City, in the purchase of the said wooden boxes, and in the shipment thereof to the Pennsylvania Railroad Company, and he avers that his interest in the said trans-

action was only as an agent for the S. O. Bell Sales Corporation, and not as the owner of the said wooden boxes, which were shipped in the two cars, as averred in paragraph two of the plaintiff's statement of claim."

There is no averment in this paragraph or any other portion of the affidavit of defence that the defendant ever disclosed to the plaintiff the fact that he was acting as the agent for the S. O. Bell Sales Corporation. That being so, it is settled law that an agent who makes a contract in his own name without disclosing his agency is personally liable to the other party to the contract: Beymer v. Bonsall, 79 Pa. 298; Paine v. Berg, 23 Pa. Superior Ct. 577.

The fact that the agent has failed to disclose to the railroad company the name of the person for whom he was acting would, in that event, make himself liable for all of the items of expense incurred in the shipment: Long Island R. R. Co. v. Landau, 49 Pa. C. C. Reps. 186.

Paragraph three of the statement of claim avers the arrival of the merchandise on Sept. 9, 1921, the refusal of the consignee to accept the goods, and the notification of the defendant of these facts by letter and telegram requesting disposal orders of the said cars.

The defendant in his affidavit of defence, in answer to these averments, merely states that he is ignorant of the facts contained in paragraph three of the statement of claim, and, if material, demands proof thereof.

In Eberbach v. Steamship Co., 74 Pa. Superior Ct. 79, Judge Linn, on page 82, said: "As Judge Finletter said in refusing judgment below: 'It is obvious that an averment of ignorance and a demand for proof are not a 'specific denial' nor the 'implication' of denial. Indeed, they are not even a 'general denial,' so that if the act means anything, the plaintiff's detailed statement of the contents of the packages must be 'taken to be admitted.' "

The defendant contends that the charges were unreasonable for the services rendered, for the storage and demurrage charges and the handling of the shipment. In paragraph seven of the affidavit of defence the defendant avers ignorance as to whether or not the shipment in Car P. R. R. 49086 remained at Northport, New York, for a period of thirty-two days, or that car P. R. R. 564187 remained at Northport, New York, for a period of thirty days, and demands proof thereof. This is also controlled by the case of Eberbach v. Steamship Co., 74 Pa. Superior Ct. 79.

He, however, avers that the charge for demurrage on the first car in the sum of $148 and on the second car in the sum of $138, or a total of $286, is an unjust and unreasonable charge for such services or any part thereof. He states that the plaintiff should not have allowed the shipment to remain on the said car longer than five days, so that a proper and reasonable charge for demurrage for the shipment of the two cars would not exceed a total of $20.

In answer to the averment contained in paragraph eight of the statement of claim, to the effect that "L. I. Tariff I. C. C. 677, Item 38 B, provides for the charge of $1 per car per day after the expiration of forty-eight hours' free time for storage in cars, in addition to the usual car demurrage charges, and in addition to the demurrage charges, carload track storage charges accrued on the two said cars at Northport, amounting to $62," the defendant denies that the charges set forth in this paragraph are reasonable and proper charges, and avers that they are unreasonable and unjust because the plaintiff should not have allowed the shipment to remain on the cars longer than five days after the refusal of the consignee to accept the said shipment, and that, therefore, a proper and reasonable charge under the said tariff, set forth in paragraph eight of plaintiff's statement of claim, would not exceed a total of $10.

Long Island Railroad Co. *v.* Keystone Iron and Metal Co.

The defendant in the following paragraphs, as to the charges made by the railroad company against the defendant, denies that the charges are reasonable or proper, and in most instances gives his reasons as to why the charges are unreasonable, improper and in some cases unnecessary.

As to the question of liability, the defendant, having failed to disclose the principal in the case, is liable and must pay whatever are the necessary and proper charges, the question here raised is: Can the affidavit of defence, by the averments therein contained, in this issue raise the question of the unreasonableness and propriety of charges? The Interstate Commerce Act provides for the conduct of business between a railroad company and a shipper, and, as long as the railroad company publishes its tariffs and files the same in accordance with the provisions of the act, that in itself is sufficient to maintain a cause of action based upon a shipment of interstate commerce. It is true that the reasonableness of the charges, made in accordance with the terms of the Interstate Commerce Act and based upon proper filed tariffs of the railroad company, cannot be tried in this proceeding. See Great Northern R. R. Co. *v.* Merchants Elevator Co., 259 U. S. 285, where Justice Brandeis said, on page 291: "Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the commission. Sometimes this is required because the function being exercised is in its nature administrative in contradistinction to judicial. But originally the determining factor is not the character of the function, but the character of the controverted question and the nature of the inquiry necessary for its solution. To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the commission is required alike in the two classes of cases. It is required because the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts."

It, therefore, is the law that, in so far as the rule of practice as provided for in the Interstate Commerce Act is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the commission in accordance with the provisions of that act, and that particular matter cannot be raised before this court.

In the case of Pennsylvania R. R. Co. *v.* Whitney and Kemmerer, 73 Pa. Superior Ct. 588, the court very carefully considered the liability of the shipper for freight and demurrage charges on a shipment of goods rejected by the consignee. In that case, Judge Porter said, on page 594: "The appellants contend, however, that even if liable for the freight, they cannot be held liable for the amount of the charges for demurrage, as such a charge implies inattention, negligence or a retention for personal use upon the part of the consignee. The shipment in this case involved interstate commerce and is controlled by the provisions of the legislation by Congress upon that subject. The Hepburn Act (34 Stat. at L. 584, ch. 3591) enlarged the definition of the term 'transportation' so as to include 'all services in connection with the receipt, delivery, elevation and transfer in transit, ventilation, refrigeration, or icing, storage and hauling of property transported; and it shall be the

duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor and to establish through routes and just and reasonable rates applicable thereto.' The effect of this legislation was commented upon in C., C., C. & St. L. Ry. Co. *v.* Dettlebach, 239 U. S. 588: 'From this and other provisions of the Hepburn Act, it is evident that Congress recognized that the duty of carriers to the public included the performance of a variety of services that, according to the theory of the common law, were separable from the carrier's service as carrier, and, in order to prevent overcharges and discriminations from being made under the pretext of performing such additional services, it enacted that, so far as interstate carriers by rail were concerned, the entire body of such services should be included together under the single term 'transportation' and subjected to the provisions of the act respecting reasonable rates and the like.' The affidavit of defence does not deny that the charges for freight and demurrage which the plaintiff seeks to recover were assessed in accordance with the tariffs duly published and filed by the plaintiff with the Interstate Commerce Commission, as required by the Acts of Congress. Such charges do not result from any private contract between the carrier and either the shipper or the consignee. They are not the subject of private contract. When the schedule of tariffs is duly filed and published, the rates become matters of positive law, and shippers, carriers and consignees alike are charged with knowledge of them. The carrier is bound to collect, and the shipper or consignee is bound to pay, the correct charges as set forth in the published tariffs: Phila. & Reading Ry. Co. *v.* Baer, 56 Pa. Superior Ct. 307; W. J. & Seashore R. R. Co. *v.* Whiting Lumber Co., 71 Pa. Superior Ct. 161. Under the Act of Congress, the charge for demurrage becomes a charge incidental to the transportation of the property, and it is the duty of the carrier to exact it from all shippers without discrimination."

The question of time, however, is an element that might well be considered. The fact as to whether or not the railroad company first could have sold the shipment of boxes for a sum in excess of $10, the amount received from the said sale, and whether or not the company took an unreasonable and improper length of time in finally disposing of these articles of freight, could be properly considered by a jury. The law places no duty upon the common carrier to sell the articles of merchandise shipped. The defendant has greater knowledge concerning the prices and values of wooden boxes, since that is his business, than has the railroad company. The defendant could have sold these boxes, if he had so desired, at any time prior to the time that they were sold by the plaintiff: Pennsylvania R. R. Co. *v.* Diulius, 25 Dist. R. 396.

However, if the plaintiff took the burden upon itself of selling these boxes, it owed a duty to the defendant to sell them for the best market price available at that time and place. There is no doubt that the plaintiff had the right to sell the merchandise, but the question arises, was it sold for the best price possible at the time and place? That is a matter for the jury.

The other question concerns the reasonableness of the retention of the shipment from Sept. 9th to Dec. 2, 1921, and whether or not it was improper for the plaintiff to have permitted the shipments to remain in the cars for more than five days.

In the case of West Jersey R. R. Co. *v.* Lumber Co., 71 Pa. Superior Ct. 161, it was held: "There is a distinct and unqualified averment in the affidavit of defence that the plaintiff's charge for 271 days' storage was an uncalled for and unreasonable charge. Whether it was or was not, under all the circum-

stances of the case, seems to us to be not a pure question of law which the court should dispose of, but a mixed question of law and fact to be submitted to a jury under proper instructions from the trial judge."

The question is also raised in the affidavit of defence concerning the reasonableness of the transfer of the merchandise from the town of Northport to Flatbush Avenue, Brooklyn, and it is averred that the charges therefor are unjust and unreasonable. According to the printed memoranda, section 4 of the conditions on the back of the bill of lading, it was provided that, in the event that the party entitled to receive the goods would not remove them, they could be then kept in the car or place of delivery of the carrier subject to the tariff charges for storage, or, at the option of the carrier, "may be removed to and stored in a public or licensed warehouse at the place of delivery or other available place at the cost of the owner." The plaintiff could, therefore, after a reasonable time, transfer this merchandise to some other available place which, under the circumstances of this case, could be deemed reasonable.

The defendant cannot find fault with the transfer of the goods. The jury may, after proper instructions from the court, determine whether or not these goods were transferred to a place reasonable under all the circumstances.

The defendant must be charged with knowledge of the existence of a bill of lading which the law requires the carrier to issue in interstate shipments: Phila. & Reading Ry. Co. *v.* Parry, 66 Pa. Superior Ct. 49.

In the opinion by Judge Head in the case of West Jersey & Sea Shore R. R. Co. *v.* Whiting Lumber Co., 71 Pa. Superior Ct. 161, it was held: "We may agree that primarily the shipper in Alabama who delivered the carload of lumber to the initial carrier was responsible to it or any later carrier for the lawful charges resulting from the transportation of the car. . . . This was an interstate shipment, and the courts were bound to take notice of the Act of Congress regulating interstate commerce. The rate for transportation was not a subject of contract; it had become a matter of positive law, and shippers and consignees alike are charged with knowledge of the rates and charges to be paid and are not entitled to exemption from compliance therewith. It is not merely the regulation of the carrier; it is the tariff established by law."

On page 167 he further said: "As to the third item of the plaintiff's claim, to wit, for 271 days' storage, in addition to the charge for demurrage already referred to, there is this to be said: Section 1 of the Interstate Commerce Act provides in part as follows: 'All charges made for any services rendered or to be rendered shall be just and reasonable; and any unjust and unreasonable charge for such services or any part thereof is prohibited and declared to be unlawful.' There is a distinct and unqualified averment in the affidavit of defence that the plaintiff's charge for 271 days' storage was an uncalled for and unreasonable charge. Whether it was or not, under all the circumstances of the case, seems to us to be, not a pure question of law which the court should dispose of, but a mixed question of law and fact to be submitted to a jury under proper instructions from the trial judge."

It was decided in the case of Bessemer & Lake Erie R. R. Co. *v.* Ford Collieries Co., 273 Pa. 166, that: "Where freight is consigned to a particular point for shipment, it is the duty of the consignee to provide a means for unloading and carrying it away. If it does not do this, the carrier is not obliged to hold the cars at that point, but may place them in a storage-yard convenient thereto, if legally authorized so to do."

From this case it would appear that the plaintiff was within its rights in placing the merchandise in a storage-yard convenient to the place of shipment. It is a question for the jury to determine whether or not the place in

which the merchandise in this matter was stored was reasonably convenient to the point of shipment.

The defendant, therefore, having failed to disclose his principal, is liable for the reasonable and proper charges in this case. All charges made in strict compliance with the Interstate Commerce Act are definitely settled and cannot be raised by the defendant in his affidavit of defence. In so far as concerns the reasonableness of the amount of the charges, the point of storage and the time for which payment is claimed, however, it is the duty of the jury, under proper instructions from the trial judge, to determine what is reasonable and proper under the circumstances. The rule is hereby discharged.