ping goods by defendant. These receipts contained a clause in substantially the form commonly found in receipts issued by express companies, by which it was agreed that the carriage rate was to be regulated by the value of the property, and was based, in the particular instance, upon a valuation of not exceeding $50, unless a greater value was declared; that the value of the property was not more than $50, unless a greater value was stated in the receipt; and that the company should not be liable for more than $50 if no value was stated therein.

The plaintiff recovered a judgment in the court below for $129 for a shipment made under the following circumstances: The driver of one of defendant's conveyances came into the plaintiff's store late in the afternoon, while plaintiff's shipping clerk was occupied in the rear of the store. The package in question was lying on a table with one of the receipts in the book, made out ready for defendant's signature. As the shipping clerk was approaching the driver, the latter hurriedly signed the receipt, took up the package, and was rapidly going out of the door with it when he was hailed by the shipping clerk, who asked him to wait until he (the clerk) could figure up and give him the value of the package, but the driver, continuing on his way, called out to the shipping clerk "Never mind;" that he was in a hurry and could not wait.

There is no proof that plaintiff ever tendered the receipt back to the defendant, or that before this action was brought he ever said or did anything in repudiation of the receipt, which he thus retained without objection, and which he offered in evidence on the trial. There was no evidence to show how the package was lost.

We think these facts justify the conclusion that plaintiff accepted the receipt in the form in which it was given; and this his subsequent silence was a waiver of whatever occurred at the time of delivery, and which might have justified his repudiation of the receipt, had he chosen to repudiate it. In this view Shwartz v. Fargo, 145 App. Div. 574, 129 N. Y. Supp. 926, has no application, and the case falls within Jonasson v. Weir, 130 App. Div. 528, 115 N. Y. Supp. 6, and Bates v. Weir, 121 App. Div. 275, 105 N. Y. Supp. 785.

Judgment reversed and a new trial ordered, with costs to appellant to abide the event. All concur.

---

(78 Misc. Rep. 347.)

## PENNSYLVANIA R. CO. v. TITUS.

(Supreme Court, Appellate Term, First Department. December 4, 1912.)

I. CARRIERS (§ 194\*)—CARRIAGE OF GOODS—FREIGHT CHARGES—LIABILITY OF CONSIGNEE.

A consignee who receives goods is presumptively the owner, and liable for the freight charges; and where a consignee took goods from the carrier's possession, depriving it of its lien for freight, he could not claim that he had no interest in the property, so as to compel the carrier to look to others for the freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.\*]

2. CARRIERS (§ 189*)—CARRIAGE OF GOODS—FREIGHT CHARGES—INTERSTATE COMMERCE ACT.

Under Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 2, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3155]), which enjoins equality of rights between shippers, a carrier of freight, who through mistake has asked and received less than the charge fixed by law, may, upon discovering its mistake, demand payment of the amount which in the first instance it should have charged.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865; Dec. Dig. § 189.*]

3. CARRIERS (§ 196*)—CARRIAGE OF GOODS—FREIGHT CHARGES—LIMITATIONS.

A carrier's action for the difference between the charge it demanded and received and the charge prescribed by the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) may be commenced at any time within the time allowed by statute.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 879–887; Dec. Dig. § 196.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Pennsylvania Railroad Company against James L. Titus, doing business under the name and style of Titus Bros. From a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, entered in favor of the plaintiff, defendant appeals. Affirmed.

Argued October term, 1912, before SEABURY, GUY, and BIJUR, JJ.

Truax & Watson, of New York City (George J. McDonnell, of New York City, of counsel), for appellant.

Burlingham, Montgomery & Beecher, of New York City (Ray Rood Allen, of New York City, of counsel), for respondent.

SEABURY, J. This case arose upon a submission of controversy to the Municipal Court, which rendered a judgment in favor of the plaintiff for $3.45, from which the defendant appeals. The action was brought to recover this sum for additional freight charges under a consignment of peaches shipped by one Franklin, of Adairsville, Ga., to the defendant at the city of New York. The peaches were shipped on or about June 27, 1907, at which time Franklin was concededly their owner. The goods were shipped to the defendant for sale upon commission, and upon the agreement that the defendant should sell and dispose of the same for and on account of Franklin and as his agent. The goods were delivered to the defendant, who sold them, and, after deducting his commissions and expenses, remitted the proceeds to Franklin, the consignor. The peaches were shipped by Franklin and delivered at Adairsville, Ga., to the Nashville, Chattanooga & St. Louis Railway Company, which company issued its bill of lading for them. The peaches were carried by that company to Philadelphia, and were then delivered to the plaintiff, which transported them to New York City, and delivered them to the defendant about July 1, 1907. The defendant paid the plaintiff the sum demanded for freight charges, amounting to $488. These charges were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assessed upon the basis of 80.2 cents per hundred pounds, which was incorrect, the correct rate being 81 cents per hundred pounds, which, computed at the latter rate, would amount to the sum of $491.-45. The error made by the plaintiff in its charges was not discovered by it until 15 months after the delivery of the peaches, and after the defendant had paid the freight charges demanded, sold the peaches, and transmitted the proceeds to the consignor. The additional charge which the plaintiff seeks to recover in this action is the difference between $491.45, the amount which should have been charged, and the sum of $488, which was actually demanded and paid. It is significant, though not decisive of the present case, that the bill of lading contained the following clause:

"Owner or consignee shall pay freight, and average, if any, and all other charges accruing on said property, before delivery, and according to weights as ascertained by any carrier hereunder; and if upon inspection, it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped, and at the tariff rates and under the rules provided for by published classification."

[1] Quite apart from the clause contained in the bill of lading, we think that the rule of law governing such a case as this is that the consignee who receives the goods is presumptively their owner, and the carrier may, in the absence of notice to the contrary, so treat the consignee, and hold him for the freight charges on the goods. 2 Hutchinson's Carriers (3d Ed.) §§ 807, 809. In the present case it is asserted that the consignee was merely the agent of the consignor, but it is undisputed that this fact was never made known to the carrier. In such a case the rule that the consignee cannot be held liable is not available to the consignee; "but, in order that the foregoing rule, that the consignee, when acting as agent for the owner, cannot be held liable for the freight, may be available to such consignee when the demand is made upon him, it must appear that the fact of such agency was in some manner disclosed to the carrier." 2 Hutchinson on Carriers (3d Ed.) § 811. When the consignee accepts the goods from the carrier, and thereby deprives the carrier of their possession and of his lien upon it for his freight, I do not think that the consignee should be permitted to claim that he has no interest in the property, and compel the carrier to look to others for payment of his freight. Sheets v. Wilgus, 56 Barb. 662.

[2] The rate which the carrier was permitted and required to charge was fixed by law, and under section 2 of the Interstate Commerce Act, which is modeled on the "equality clause" of the English Railway Act (Texas, etc., R. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940), equality of rates between shippers is enjoined. If, through mistake, the plaintiff, as carrier, asked and received less than by law it was required to ask, it had the right, upon discovery of its mistake, to demand payment of the amount which, in the first instance, it should have demanded.

[3] The mere fact that the carrier delayed 15 months before bringing an action to recover this amount does not bar its claim. It is

not suggested that the present action is barred by any statute of limitations, and, provided the action is commenced within the time allowed by statute, it makes no difference how long its commencement was delayed.

Judgment affirmed, with costs. All concur.