# Pennsylvania Railroad Company *v.* Crutchfield, Appellant.

*Railroads—Carriers—Freight—Rates—Discrimination.*

1. Where the agent of a railroad company has by mistake charged and collected a less amount of freight than that specified in the published schedule, the company may thereafter collect the difference from the shipper or person liable for the freight.

2. Where goods were consigned to a shipping merchant, and through a mistake of the company's agent a less amount of freight was collected than that prescribed by the published schedule, and the company sues the consignee for the difference, the latter in order to escape liability must aver in his affidavit of defense that the railroad company knew that the particular shipment in question had been made to the defendant as a commission merchant on account of a consignor. The mere fact that the railroad company knew that the defendant was a commission merchant and was in the habit of receiving shipments of goods to be sold on commission, is immaterial, inasmuch as the defendant may have contracted for merchandise on his own account.

Argued May 9, 1913. Appeal, No. 204, April T., 1913, by defendants, from judgment of C. P. Allegheny Co., April T., 1913, No. 362, on verdict for plaintiff in case of Pennsylvania Railroad Company *v.* J. S. Crutchfield and R. B. Woolfolk, trading and doing business as Crutchfield & Woolfolk. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Assumpsit for freight.

The plaintiff's statement of claim averred that on or about June 27, 1907, the plaintiff transported and delivered to the defendants in interstate commerce a car of cantaloupes; and that the defendants paid the refrigeration charges, and $134.16 on account of the freight charges, whereas, accordng to the tariff then in force the freight charges amounted to $145.20, leaving a balance of $11.04, which the defendant neglected and refused to pay.

The defendants in their affidavit of defense averred

that the cantaloupes were owned and shipped by the Gainesville Melon Growers Association; that the defendants were commission merchants, as the plaintiff well knew, engaged in the business of receiving shipments from the plaintiff to be sold and the proceeds remitted to the owner and shipper, less the freight and other charges thereon; and that the defendants made such sale and remittance in this case.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*R. T. M. McCready*, for appellant.—The affidavit of defense was sufficient: Illinois Cent. R. R. Co. v. Elevator Co., 226 U. S. 441; Chicago & Alton Ry. Co. v. Kirby, 225 U. S. 155; Armour Packing Co. v. United States, 209 U. S. 56 (28 Sup. Ct. Repr. 428); Lake Shore & Michigan S. Ry. Co. v. Elsey, 85 Pa. 283; Dempsey v. R. R. Co., 30 Pa. C. C. Rep. 484; St. Louis & S. W. Ry. Co. v. Gramling, 97 Ark. 353; Central R. R. of N. J. v. MacCartney, 68 N. J. L. 165 (52 Atl. Repr. 575); Phila. & Reading Ry. v. Baer, 38 Pa. C. C. Rep. 549; Merchants Cotton Press & Storage Co. v. Ins. Co., 151 U. S. 368 (14 Sup. Ct. Repr. 367); Standard Oil Co. v. United States, 179 Fed. Repr. 614.

*Charles Alvin Jones*, with him *Patterson, Sterrett* and *Acheson*, for appellee.—The consignees' liability for the freight charges on this shipment is clear: Penna. R. R. Co. v. Titus, 138 N. Y. Supp. 325; Sheets v. Wilgus, 56 Barbour (N. Y.), 662; St. Louis & S. W. Ry. Co. v. Gramling, 97 Ark. 353; Penna. R. R. Co. v. Nursery Co., 60 Pitts. Leg. J. 391.

The consignees were presumptively the owners of the shipment and the carrier was justified in so treating them and may look to them for the balance of freight charges, due thereon: North German Lloyd v. Heule,

44 Fed. Repr. 100; Armour Packing Co. v. United States, 209 U. S. 56 (28 Sup. Ct. Repr. 428).

The carrier's duty to collect the lawful freight charges on an interstate shipment from one liable therefor is imperative: Penna. R. R. Co. v. Titus, 138 N. Y. Supp. 325; Louisville & N. R. R. Co. v. McMullan, 59 So. Repr. 683.

The doctrine of estoppel is not applicable: Poor Grain Co. v. Chicago, B. & Q. R. R. Co., 12 I. C. C. Rep. 418; Com. v. Moltz, 10 Pa. 527; B. & O. S. W. Ry. Co. v. Box and Basket Co., 94 N. E. Repr. 906.

OPINION BY HENDERSON, J., October 13, 1913:

The appellants' discussion of the case proceeds on the theory not only that the consignment of merchandise was made to the defendants as commission merchants but that the plaintiff had knowledge of the relation of the former to the transaction. It is then argued that the consignees were not liable for the freight bill and that if by mistake a smaller sum was charged for the transportation than was fixed by the published schedule no principle of law or equity subjects the defendants to liability for the unpaid balance. It is further contended that when the defendants paid all the plaintiff demanded and the latter released the goods the transaction was closed so far as the defendants are concerned and that in any view of the case when the plaintiff induced the defendants to believe that the amount demanded was the whole charge and the defendants relying on that representation paid the amount claimed and settled with the consignor an estoppel arises against the plaintiff which forbids the recovery of the amount sued for. The defect in the reasoning on this branch of the case is that it is not averred in the affidavit of defense that the plaintiff knew that this shipment of merchandise was to the defendants as commission merchants on account of the consignor. It is alleged in the fifth paragraph of the affidavit that the defendants at the

time of receiving the consignment of cantaloupes were commission merchants to whom the plaintiff company was in the habit of delivering consignments of merchandise daily to be sold on commission for the shippers thereof and the proceeds thereof less the freight and other charges thereon were remitted promptly to the shippers, and that the plaintiff knew of this course of business. But this does not exclude the conjecture that the defendants may have contracted for fruit or other merchandise on their own account. It was necessary to set forth that this particular shipment was made on account of the consignors to the defendants as commission merchants in order to place the latter in a position with respect to which it could be contended that the consignees were not bound for the freight but might pay at their option and that they assumed no obligation to pay by receiving the merchandise. The defendants were the regular consignees of the goods and were therefore authorized to deal with the plaintiff in that capacity. The plaintiff was under obligation to deliver the property on demand after the payment of the transportation charges and in the absence of knowledge that the consignees were not the real owners was authorized by the bill of lading to treat them as such and to release the property to them. Not having informed the plaintiff of their special relation to the property as we are bound to assume from the fact that it is not so averred in the affidavit the defendants as consignees were liable for the freight and being so liable were bound to pay the rate fixed by law: Penna. R. R. Co. v. Titus, 138 N. Y. Supp. 325; 2 Hutchinson on Carriers, 3d ed., secs. 807–811. The carrier was forbidden to allow on this shipment a different rate from that charged to others engaged in the same sort of transportation. The responsibility of the carrier to collect the lawful freight charge in interstate commerce is clearly shown in Texas & Pac. R. R. Co. v. Mugg, 202 U. S. 242, and Ill. Cen. R. R. Co. v. Henderson Ele-

vator Co., 226 U. S. 441. If the mistake or inadvertence of the agent of the carrying company should be held to exonerate the shipper or other person liable for the freight and thereby enable him to secure transportation at a lower than the legal rate the object of the law to prevent unfair discriminations to the advantage of favored shippers would in a great measure be circumvented. The right of the plaintiff to demand the lawful charge is not disputed and it could have held the goods under its lien until that amount was paid. The carrier being bound to exact the lawful amount and the shipper being under obligation to pay that amount the law forbids that by any device the shipment should be made at a different and lower rate. Nor does the general usage and custom of the railroad company and its patrons affect the question. There is something more in the case then as was observed by the learned judge of the court below than the mere private relation of the parties growing out of the contract of shipment. The subject of the transportation of goods between the states has become the subject of public law and is regulated as to freight charges by the acts of congress. The rates of charge in interstate commerce when approved by the Interstate Commerce Commission and posted as required by law become the rates which the law imposes both on shipper and carrier as the compensation for the service rendered. The carrier must charge that rate and the shipper or other person liable must pay that amount. The estoppel set up by the appellants cannot apply, therefore. They were as much bound as was the plaintiff to know what the freight schedules contained and were obliged to govern themselves accordingly. The statement of the agent of the plaintiff that the freight charge was the particular sum did not relieve the defendants from paying or the plaintiff from collecting as they were bound by law to do. The defendants could not rely, therefore, on the representations of the party to be estopped, as the amount of the rates

was as much within the legal knowledge of the defendants as of the plaintiff. They were posted in accordance with law and when so posted affected shipper and carrier alike. On the case set forth in the statement of claim and the affidavit of defense we are of the opinion that judgment was properly entered.

Judgment affirmed.