# Philadelphia & Reading Railway Company, Appellant, *v*. Baer.

*Carriers—Common carriers—Railroads—Rates—Interstate commerce.*

1. The rate for transportation is made by the Interstate Commerce Act, a subject of positive law, and contracts express or implied providing otherwise, or any consent or permission through which a lower rate is claimed or sought to be enforced is of no effect. Shippers and consignees are alike charged with knowledge of the rate to be paid, and are not entitled to exemption from compliance therewith, because an agent of the carrier made a mistake in giving a lower rate.

2. Where a railroad company delivers goods to the consignee named in the bill of lading, and through a mistake of an employee demands and receives from the consignee a less amount than the lawful charge for the·service rendered, the railroad company is not estopped from subsequently recovering the difference between the amount actually paid and the legal rate.

Argued Oct. 24, 1913. Appeal, No. 107, Oct. T., 1912, by plaintiff, from judgment of C. P. No. 5, March Term, 1911, No. 1,856, on verdict for defendant in case of Philadelphia & Reading Railway Company v. George M. Baer and C. G. Heyd, trading as George M. Baer & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Appeal from judgment of magistrate. Before MARTIN, P. J.

At the trial the court in its charge stated the facts to be as follows:

The Dawson Creamery Company shipped from Minnesota to George M. Baer & Co., the defendants, fourteen tubs of butter. The freight rate was $13.81. It was transported over the Reading Railroad, and when delivered to George M. Baer & Co., the railroad company charged $7.64 freight, instead of $13.81. That charge was the result of a mistake on the part of an

employee of the railroad company.  Baer & Co. were commission men.  They did not own the butter, but received it on consignment for the purpose of selling it for the Dawson Creamery Company.  They sold the butter, deducted the charges and commissions including the sum of $7.64 paid for freight and settled with the consignor.  After the defendants had paid the net proceeds of the sale to the Dawson Creamery Company, a bill was sent by the plaintiff to the defendants for $6.17, the balance of freight.  They declined to pay it, and this suit was instituted.

The court directed a verdict for defendant.

Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* was in directing a judgment for defendant.

*George Gowen Parry*, with him *William J. Graham*, for appellant.—The consignee is prima facie liable for the freight and if he accepts the goods the law implies a promise on his part to pay it: Reed v. Weld, 6 Fed. Repr. 304; Irzo v. Perkins, 10 Fed. Repr. 779; Penna. R. R. Co. v. Titus, 138 N. Y. Supp. 375; Davis v. Pattison, 24 N. Y. 317; Hinsdell v. Weed, 5 Denio, 172; Cent. R. R. of N. J. v. MacCartney, 68 N. J. Law, 165; Pelayo v. Fox, 9 Pa. 489; Dempsey v. P. & R. Ry. Co., 14 Pa. Dist. Rep. 111; Gates v. Ryan, 37 Fed. Repr. 154; Davison v. City Bank, 57 N. Y. 81; North Penn. R. R. Co. v. Commercial Natl. Bank, 123 U. S. 727; American Sugar Refining Co. v. McGhee, 96 Ga. 27.

The consignees agreed to pay the legal rate: Interstate Commerce Co. v. Baltimore, etc., R. R. Co., 145 U. S. 263; Texas & Pac. R. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Interstate Com. Comm. v. Ry. Co., 141 Fed. Repr. 1003; U. S. Standard Oil Co., 148 Fed. Repr. 719; Suffern v. Ry. Co., 7 I. C. C. 255;

Armour Car Lines v. Ry. Co., 17 I. C. C. 461; New York, New Haven & H. R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361; Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242; Savannah, Fla. & West. Ry. Co. v. Bundick, 94 Ga. 775.

There was no estoppel: Central R. R. of New Jersey v. MacCartney, 68 N. J. L. 165; Dempsey v. Ry. Co., 14 Pa. Dist. Rep. 111; Poor v. Ry. Co., 12 I. C. C. 418; Pitts. v. R. R. Co., 10 I. C. C. 684; N. Y., N. H. & H. R. R. Co. v. Whitney, 102 N. E. Repr. 366; Penna. R. R. Co. v. Titus, 138 N. Y. Supp. 375.

*Edwards Brooks, Jr.*, with him *Frederick J. Geiger*, for appellee.

OPINION BY HENDERSON, J., February 20, 1914:

The interstate commerce legislation was enacted as expressly declared "to secure reasonable charges for transportation; to prohibit unjust discrimination in the rendition of like services under similar circumstances and conditions; to prevent undue or unreasonable preferences to persons, corporations, or localities; to inhibit greater compensation for a shorter than for a longer distance over the same line, and to abolish combinations for the pooling of freights." It forbids that any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges specified in the tariff rates published as required by the act. It broadly covers the solicitation or receipt of any arrangement or concession however obtained which permits the carriage of property at less than the published rate. It is remedial legislation to be so interpreted as to reasonably secure the result intended. One of the effects of the decision in Gulf, Col. & Santa Fe Ry. Co. v. Hefley, 158 U. S. 98, was that any agreement, concession or acquiescence for transportation of merchandise at less than the rate lawfully established is void and this was reaffirmed in New York, New Haven & H. R. R. Co. v.

I. C. C., 200 U. S. 361, and in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426. The rate for transportation is thus made a subject of positive law and contracts express or implied providing otherwise or any consent or permission through which a lower rate is claimed or sought to be enforced is of no effect. The carrier is obliged to collect, and the shipper or consignee is bound to pay, the correct charges as set forth in the published tariffs and this result is unaffected by the mistakes of freight agents and their clerks. Shippers and consignees are alike charged with knowledge of the rate to be paid and are not entitled to exemption from compliance therewith because an agent of the carrier made a mistake in giving a lower rate. This rate is not merely the regulation of the railroad company; it is the tariff established by law. This is the doctrine of Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, and numerous other federal cases and is clearly set forth in Cent. R. R. Co. of N. J. v. Mauser, 241 Pa. 603. The plaintiff was, therefore, entitled to recover the amount of the lawful freight charge omitted from the bill of lading.

The consignee is presumptively the owner of the merchandise and may be treated as such by the carrier in the absence of notice to the contrary: Hutchinson on Carriers, sec. 807; Davis v. Pattison, 24 N. Y. 317; Hinsdell v. Weed, 5 Denio, 172; Gates v. Ryan, 37 Fed. Repr. 154; Pelayo v. Fox, 9 Pa. 489; Penna. R. R. Co. v. Crutchfield, 55 Pa. Superior Ct. 346; 3 Kent Com. 221. The plaintiff was required in accordance with the bill of lading to deliver the merchandise to the defendants and, in the absence of information that they were not the owners, was justifiable in delivering it without the immediate payment of the carrying charge on the implied promise that the lawful rate would be paid. The ignorance of the parties that a mistake had been made in the amount did not affect the question of liability. There is no place for the doctrine of equitable estoppel as applied to such a state of facts. The consignees were

bound to know what the freight charge ought to be and having accepted the merchandise and recognized their liability to pay the freight by paying the amount demanded and taking the property away, a resulting liability was to pay on demand what ought to have been paid when the freight was removed and the carrier's lien released. It follows that the learned judge of the court below was in error in holding that the defendants were estopped by reason of the mistake of the plaintiff in demanding and receiving from the defendants a less amount than the lawful charge for the service rendered.

The judgment is reversed and a venire facias de novo awarded.