## Chicago Great Western R. R. Co. v. Federal Stock Food Co.

*Carriers — Freight charges — Consignor and consignee — Acceptance of goods by consignee—Agreement by carrier to look to consignor for freight charges.*

1. The consignor is primarily liable for the freight; but if any acts of ownership are exercised over the consignment, the carrier can look to the consignee for it.

2. If the consignee refuses to accept the goods and pay the freight, and the carrier then expressly agrees that if the consignee will accept the goods, the carrier will look to the consignor for the freight, the consignee, on accepting the goods, does not make himself liable for it.

3. In such case, the acceptance of the goods is not an act of ownership which makes the consignee liable for the freight, in view of the express agreement of the carrier to look to the consignor for it.

4. It is the duty of both consignor and consignee to know the tariff rates on shipments, but the application of the rule in this case is immaterial.

*Assumpsit.* Rule for judgment for want of a sufficient affidavit of defence. C. P. Union Co., May T., 1925, No. 26.

*Andrew A. Leiser,* for rule; *Cloyd Steininger,* contra.

POTTER, P. J., April 8, 1926.—From the pleadings in this case we are led to believe that the defendant had sold to one E. M. Gremmels, of Celwein, Iowa, 16,550 pounds of stock food, which was shipped to him from Mifflinburg, Union County, Pennsylvania, sometime in October, 1920, and that this consignment of merchandise reached its destination.

For some reason, not disclosed to us, the said Gremmels, the consignee, without the knowledge or consent of the consignor, shipped the said consignment of stock food back to the defendant, the same reaching Mifflinburg about April 7, 1922, about one and one-half years after it had been shipped by the defendant to the said Gremmels.

The freight on the shipment from Pennsylvania to Iowa had apparently been paid, presumably by the defendant.

Upon the return shipment there is claimed to be due the sum of $218.46 as unpaid freight. The goods were sent partly over the railroad of the plaintiff and partly over the Pennsylvania Railroad system in reaching Mifflinburg, and the plaintiff has brought this suit against the defendant for the recovery of this sum of freight claimed to be due and unpaid.

A statement of claim was filed, which was replied to by an affidavit of defence, when a rule was taken out asking for judgment for want of a sufficient affidavit of defence, which we have before us for disposal.

The plaintiff's railroad does not run to Mifflinburg, while that of the Pennsylvania Railroad does, so that when these goods reached the end of the road

of the plaintiff, the goods were transferred and the Pennsylvania Railroad was substituted to deliver the goods to Mifflinburg, and in that sense the latter railroad acted as a substitute for the former.

The *first* reason assigned for judgment is as follows: "The defendant admits (paragraph 4) that, before accepting delivery of the shipment consigned to him, he knew the freight thereon had not been prepaid, and by accepting the same he thereby became liable for the payment of said freight charges."

This statement as a general principle of law, we think, is correct. The defendant did, after certain representations were made to him by the agent of the Pennsylvania Railroad Company, at Mifflinburg, receive the goods. But, in order to extend to this defendant all the fairness attributable to a court of justice, we should also consider what promises and representations were made to him by the railroad agent, by reason of which he took them into his custody.

In paragraph 3 of the affidavit of defence it is stated that this return shipment was made and done without the consent, order or authority of the defendant, and the shipment was the property of Gremmels and not that of the defendant. It is also stated in paragraph 4 that this shipment was tendered to him by the agent of the Pennsylvania Railroad Company, at Mifflinburg, on April 7th, upon payment of the freight charges; that he refused the shipment, and that thereupon the said agent specially agreed, promised and covenanted with him that if he would receive the said shipment, the carriers would look to the shipper and consignor, viz., E. M. Gremmels, for the payment of the freight, and would exonerate him from any liability for the same, and that upon this promise he received the goods, and still holds the same, subject to the order of the plaintiff, of which this plaintiff had full and timely notice. And in paragraph 5 the defendant avers that the said merchandise was sold and delivered to Gremmels, that he was the owner of it, and that the defendant has no further interest in it or control over it, and did not attempt to exercise any control over it in any manner.

We cannot but take notice of the fact that this defendant may have taken the goods in question into his custody in order to prevent and save a charge of demurrage for his purchaser, which would occur by reason of the use of railroad property containing the goods being allowed to stand indefinitely upon its tracks, or from a sacrificed sale of the same for freight due. If this was his motive in taking into his custody these goods, which he avers did not belong to him, he should not suffer for his good intentions. At any rate, he says he is holding them subject to the order of the plaintiff, and they can sell them any time they so desire for the freight claimed to be due. We are also bearing in mind the familiar principle that the consignor is primarily liable for the freight: Louisville & Nashville R. R. Co. *v.* Central Iron and Coal Co., 265 U. S. 59; New York Central & H. R. R. R. Co. *v.* York & Whitney, 256 U. S. 406. If any acts of ownership are exercised over the consignment, the carrier can look to the consignee for it: Pennsylvania R. R. Co. *v.* Cameron, 78 Pa. Superior Ct. 497.

But can it be said that acts of ownership were exercised over this consignment by this defendant? When the goods arrived, he refused to lift them. He also refused to pay the freight. After promises were made to him, as herein before enumerated, he took them into his custody, where they now are, subject to the order of the plaintiff. We do not think this defendant is the owner of these goods, nor that he exercised acts of ownership over them. He sold them in October, 1920. They were out of his possession, control or owner-

ship one and one-half years, or thereabouts. It can be well said that this plaintiff could have collected the amount of this freight bill from Gremmels, the consignor, when the shipment was made, and, in fact, we think it was his duty, primarily, to do so: Wells Fargo & Co. v. Cuneo, 241 Fed. Repr. 727; Yazoo & M. V. R. R. Co. v. Zemurray, 238 Fed. Repr. 789. Under the light so far before us, we are rather inclined to regard this defendant as a bailee and not as the owner of these goods. At any rate, we think there is a question of fact raised which should be submitted to a jury for disposal.

The *second* reason assigned for judgment is as follows: "The defendant knew, and was bound to know, that the railroad agent at the point of delivery had no authority to waive the payment of the freight charges as a condition of delivery, and by accepting said shipment as consignee he became liable for the freight thereon."

We cannot concur with this statement of law, in view of the allegations in the affidavit of defence. As we have hereinbefore said, the carrier can look to either the consignor or to the consignee for the payment of the freight due, and when the agent of the carrier told the defendant that he should receive the goods and that they would collect the freight due from Gremmels, the consignor, we believe he had reason to think they had made their election to collect from Gremmels, and especially so, when this defendant avers in his affidavit of defence that he did not receive the goods as owner, but that he received and held them subject to the order of the plaintiff. Had he received these goods out and out, with no conditions and with no "ifs" or "buts" attached, we can readily see how he would be liable, and we would then be obliged to enter judgment. But under the alleged representations made to him by the agent of the carriers, we think this, too, is a question the jury should pass upon as a matter of fact.

The *third* reason for judgment is as follows: "The allegation (paragraph 6) that the freight charges are excessive is of no weight, as the statement of claim shows the tariffs on which the freight charges are based, which tariffs are fixed by the Interstate Commerce Commission and determine the freight charges on the shipment in question, and which tariffs have all the force and effect of a statute governing the same, and which freight rates the shipper and the consignee are bound to know as well as the carrier."

With this statement of law we heartily concur, and if this was the only question involved in this controversy, we would have no hesitation in entering judgment. It is the duty of the consignor, as well as of the consignee, to know the tariff rates on shipments: Central R. R. Co. of New Jersey v. Mauser, 241 Pa. 603; Pennsylvania R. R. Co. v. A. J. Cameron & Co., 78 Pa. Superior Ct. 497; Phila. & Reading Ry. Co. v. Baer, 56 Pa. Superior Ct. 307; Pennsylvania R. R. Co. v. Crutchfield, 55 Pa. Superior Ct. 346.

The cases cited are not on all fours with the questions herein involved, but we think they tend to show that not knowing the tariff rates would be no excuse for refusing payment of freight by an owner of the goods.

In view of our disposition of the first and second reasons, the rule must be discharged. We think the affidavit of defence is sufficient to prevent judgment and to carry the case to a jury.

And now, to wit, April 8, 1926, the rule for judgment for want of a sufficient affidavit of defence is discharged, to which ruling an exception is noted for the plaintiff and a bill is sealed.

From Charles P. Ulrich, Selinsgrove, Pa.